# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2754

EDWARD RAYBOURNE,

*Plaintiff-Appellant,*

*v.*

CIGNA LIFE INSURANCE COMPANY OF NEW YORK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 3205—**Robert W. Gettleman**, *Judge*.

ARGUED JULY 8, 2009—DECIDED AUGUST 6, 2009

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. Edward Raybourne suffers from a number of degenerative conditions in his right foot, and especially in his great right toe. In 2003 he stopped working because of the severe pain that these conditions cause. Raybourne initially received long-term disability benefits under his employer's group benefit plan, which is insured by Cigna Life Insurance Company of New York. However, two years later Cigna

determined that he no longer qualified for benefits because he could not meet the plan's requirement of showing that his disability prevented him from performing any job. Raybourne then brought this ERISA suit under 29 U.S.C. § 1132(a)(1)(B). The district court concluded that Cigna did not abuse its discretion in discontinuing Raybourne's benefits and granted Cigna summary judgment. The key questions in this appeal concern the appropriate standard of judicial review and the application of the Supreme Court's recent pronouncement in *Metropolitan Life Insurance Company v. Glenn*, 128 S.Ct. 2343, 2348 (2008), advising courts to take cognizance of structural conflicts in ERISA cases. Although we conclude that the district court properly reviewed Cigna's decision under the abuse-of-discretion standard, we cannot be sure that it adequately accounted for Cigna's structural conflict of interest, as required by *Glenn*. Accordingly, we vacate and remand for further proceedings.

## Background

After serving for 23 years as a Quality Control Manager for L-3 Communications Holdings, Inc., Raybourne stopped working in 2003 to undergo the first of four surgeries on his right foot. The surgeries were meant to alleviate the pain caused by a degenerative joint disease in his right great toe.

From December 2003 through February 2006 Cigna paid Raybourne long-term disability benefits under L-3's benefit plan. The L-3 plan provides long-term disability payments for 24 months if the beneficiary's condition

prevents him from performing his regular job. After 24 months a more stringent standard kicks in: the beneficiary must be unable to perform "all the material duties of *any* occupation" that he is reasonably qualified for based on his education, training, or experience.

In June 2005—six months before the end of Raybourne's initial 24-month period—Cigna began to investigate whether he qualified for further benefits under the more stringent standard. Cigna requested updated medical records from Raybourne's doctors, including Dr. Ronald Sage, a podiatrist who had performed Raybourne's third and fourth surgeries. Dr. Sage reported that Raybourne could sit, stand, or walk for less than two and a half hours in an eight-hour day. He expected Raybourne's condition to continue indefinitely. Cigna submitted Raybourne's medical files and Dr. Sage's reports to three case managers, who referred Raybourne for an independent medical examination ("IME").

The IME was conducted by Dr. J.S. Player, a board-certified orthopedic surgeon. He reviewed the medical files and in January 2006 he physically examined Raybourne. Dr. Player noted that Raybourne walked with a cane but observed that he maintained a normal posture while standing and appeared comfortable sitting for extended periods. He agreed that Raybourne had a degenerative joint disease in his right great toe and that he suffered from a loss of motion and strength in his right foot. But Dr. Player concluded that Raybourne was engaging in "symptom magnification" and had an "abnormally high degree of perceived disability." He

also concluded that Raybourne could return even to his former job as long as he did not have to walk or climb stairs.

In February 2006 Cigna sent Dr. Player's IME to Dr. Sage and asked for his comments. Dr. Sage said that he agreed with Dr. Player's findings based on the physical examination, but reiterated that Raybourne could not return to his former job because of the severity of his foot pain. The same month, a rehabilitation specialist retained by Cigna identified six jobs that Raybourne could perform in the Chicago market.

By letter dated March 1, 2006, a Cigna claim manager informed Raybourne that Cigna had decided to terminate his long-term disability benefits. Raybourne appealed using Cigna's internal appeals process. He submitted an April 2006 report from Dr. Sage confirming that his chronic degenerative conditions left him unable to work. He also submitted a social security form completed by Dr. Sage reporting that he suffered from "intractable pain." An appeals claim manager consulted with Dr. R. Norton Hall, an associate medical director at Cigna, who concluded that Dr. Sage's report did not establish that Raybourne was incapable of performing all work. The manager concluded that Raybourne's new evidence was insufficient to overcome the conclusions of Drs. Hall and Player that he could perform sedentary work. Accordingly, the appeals claim manager upheld the denial of benefits.

Six months later Raybourne filed his second internal appeal. He argued that Cigna should disregard the IME

because, he said, Dr. Player had not considered his pain or the side effects of his pain medication. He also submitted a copy of a favorable social security disability ruling, dated three days before Raybourne's first appeal was denied. In that ruling, the administrative law judge found that Raybourne's willingness to undergo surgery in attempts to alleviate his pain showed that the pain was genuine and concluded that he was incapable of performing full-time work.

As part of the review process, Cigna forwarded Raybourne's new evidence to a second associate medical director, Dr. Paul Seifarth. Dr. Seifarth noted Dr. Sage's remark that pain would prevent Raybourne from concentrating enough to work, but dismissed the remark as unsubstantiated. In May 2007 an appeals claim manager denied Raybourne's second appeal.

This suit followed. At summary judgment, one of the key disputed issues was the appropriate standard of review under which the district court would review Cigna's decision to deny benefits. Ultimately the court concluded that the plan conferred discretion on Cigna to make this decision, thereby requiring review under the abuse-of-discretion standard. The court was "disturbed" by the discrepancy between Cigna's decision and the social security award and acknowledged that under a less deferential standard of review it might overturn Cigna's decision. But the court concluded that Cigna had not abused its discretion in denying Raybourne's claim for benefits, and accordingly, it granted Cigna summary judgment.

**Analysis**

This court reviews a district court's grant of summary judgment on an ERISA claim de novo. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 809 (7th Cir. 2006).

### A. The Proper Standard of Review under ERISA

A central question in this appeal is whether this court should review Cigna's decision de novo, as Raybourne argues, or as Cigna argues, for abuse of discretion. The answer hinges on the language of the plan documents. *See Glenn*, 128 S.Ct. at 2348; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). De novo review is presumed to apply unless the plan documents clearly state that the plan administrator has discretionary authority to determine whether benefits are due. *Firestone*, 489 U.S. at 115; *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). A plan's express grant of discretion to the administrator lowers the standard of judicial scrutiny from de novo to abuse-of-discretion. *Firestone*, 489 U.S. at 115.

To demonstrate that the abuse-of-discretion standard applies, Cigna points to a document entitled "Employee Welfare Benefit Plan Appointment of Claim Fiduciary" (hereafter, "Claim Fiduciary Appointment"), which grants Cigna "the authority, in its discretion, to interpret the terms of the Plan . . . to decide questions of eligibility for coverage or benefits under the Plan." That grant of discretion is also described in a Summary Plan Description ("SPD"), which states that "[t]he Plan

Administrator has delegated to the insurance company the full and complete discretionary authority and responsibility to decide all questions of eligibility for benefits under the Plan." This court has found similar (indeed, almost identical) language to be sufficient to trigger review under the abuse-of-discretion standard. *See Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 408 (7th Cir. 2004); *Herzberger*, 205 F.3d at 331.

Instead of suggesting that the quoted language is insufficient to confer discretion, Raybourne argues that the Claim Fiduciary Appointment is not a plan document. According to Raybourne, the Claim Fiduciary Appointment is an extrinsic document that he did not receive until this litigation was underway, and it is neither incorporated nor referenced anywhere in the plan. But the language of the Claim Fiduciary Agreement explains why Raybourne did not receive it—it states that the plan administrator must describe its discretion "in Summary Plan Descriptions furnished to Participants." The SPD—which describes the plan's grant of discretion to Cigna—explains that the "actual provisions of the Plan are set forth in the insurance policy and the claims fiduciary agreement between L-3 Communications and Cigna." Elsewhere we have rejected Raybourne's assumption that only the original plan (here, the underlying insurance policy) may be considered in determining whether a plan administrator is entitled to deference: "often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Semien*, 426 F.3d at 811 (citation omitted); *Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 990-91 (7th Cir. 2005)

(noting that an insurance policy and a policy certificate can be "plan documents"); *see also Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) (noting that it is appropriate to review trust documents "in the search for a reservation of discretion"). In *Semien*, we considered alongside the original plan a fiduciary agreement similar to the one put forth by L-3 here. 436 F.3d at 810-11. And given that the Claim Fiduciary Appointment provides the name of the plan and plan administrator, is signed by representatives of the plan and Cigna, and states that it "shall be effective" from the date of the underlying insurance policy, it is difficult to see how it could be anything other than a plan document.

Raybourne argues relatedly that neither the Claim Fiduciary Appointment nor the SPD is the type of document that this court has considered sufficient to bestow discretion on a plan. He relies on *Ruttenberg v. United States Life Insurance Company*, 413 F.3d 652 (7th Cir. 2005), and *Schwartz v. Prudential Insurance Company of America*, 450 F.3d 697 (7th Cir. 2006), but both of those cases are distinguishable. In *Ruttenberg* we refused to consider a grant of discretion set forth in an application for employee benefits because the application represented only the negotiations leading up to the insurance contract, and the contract itself was silent on the issue of discretion. 413 F.3d at 660. By contrast, here the Claim Fiduciary Appointment modifies the terms of the underlying plan, and its grant of discretion to Cigna is described in the SPD furnished to L-3 employees. In *Schwartz* we held that a grant of discretion that appears in an SPD but not the underlying plan is insufficient to

warrant deferential review because an SPD—which is meant to be a plain language version of the underlying plan—may not confer rights that the plan itself does not. 450 F.3d at 699. But here the discretion described in Cigna's SPD does not exist in a vacuum; the Cigna SPD refers to the Claim Fiduciary Appointment and explains the discretion that it confers. We thus conclude that the Claim Fiduciary Appointment is a plan document, and accordingly, the abuse-of-discretion standard of review applies.

**B.  Applying the Abuse-of-Discretion Standard of Review After *Glenn***

Under the arbitrary-and-capricious standard—which, at least for ERISA purposes, is synonymous with abuse of discretion—this court will overturn an administrator's denial of benefits only if it lacks any rational support in the record. *See Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 & n.8 (7th Cir. 2009). In other words, this court's role is not to decide whether it would reach the same decision as the administrator, *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006); rather, as long as specific reasons for the denial are communicated to the claimant and supported by record evidence, this court will uphold the administrator's decision, *see Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 831 (7th Cir. 2009).

Raybourne's strongest argument on appeal is that the district court insufficiently engaged the Supreme Court's

recent decision in *Metropolitan Life Insurance Company v. Glenn*, 128 S.Ct. 2343 (2008)—which issued just five days before Cigna won summary judgment—in assessing whether Cigna's inherent conflict of interest (as a plan administrator that both adjudicates claims and pays awarded benefits) rendered its decision arbitrary and capricious. In *Glenn*, the Supreme Court clarified that courts should be aware of structural conflicts of interest in reviewing plan decisions for abuse of discretion. *Id.* at 2348. A structural conflict is one factor among many that are relevant in the abuse-of-discretion analysis— including whether the administrator overemphasized medical reports that favored its decision and whether it gave its medical examiners all of the relevant evidence—and will "act as a tiebreaker when the other factors are closely balanced." *Id.* at 2351-52. *Glenn* emphasizes that courts should give additional weight to a structural conflict where the administrator has a history of biased claim administration or helped a claimant obtain a social security award it then disregarded. *Id.* The conflict may be "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* at 2351. Although the Court stressed that there is no "precise set of instructions" for weighing the relevant factors, it emphasized that a structural conflict may not be ignored. *Id.* at 2351-52.

Raybourne correctly points out that it is unclear whether the district court properly accounted for Cigna's structural conflict of interest. In its opinion awarding Cigna summary judgment, the district court included a

short footnote recognizing that *Glenn* issued "[a]fter this opinion was prepared," and stating summarily that "nothing in [*Glenn*] has altered" its analysis. The district court then denied, without explanation, Raybourne's motion for reconsideration in light of *Glenn*.

Given the district court's cursory treatment of *Glenn,* we cannot determine whether it engaged in the balancing analysis that *Glenn* requires with respect to a plan administrator's conflict of interest. For instance, the district court did not mention Cigna's structural conflict in evaluating and paying for claims, or explain how the conflict weighed in the abuse-of-discretion balance. Moreover, the court had little to say beyond acknowledging that it was "disturbed" by the discrepancy it saw between Cigna's hiring of a consultant group to advocate on Raybourne's behalf before the SSA, and Cigna's subsequent denial of his claim for benefits despite the SSA's finding of disability. The court ultimately disregarded the discrepancy because it concluded that Cigna's decision was supported by the record. But after *Glenn*, Cigna's advocacy of a disability finding before the SSA should have been treated as a "serious concern" for the court to consider in weighing whether Cigna's structural conflict rendered its denial of benefits arbitrary. *See DeLisle v. Sun Life Assurance Co. Of Canada*, 558 F.3d 440, 446 (6th Cir. 2009).

In the wake of *Glenn*, other circuits have not hesitated to remand cases so that district courts may consider the impact of a structural conflict in the first instance. *See, e.g., Denmark v. Liberty Life Assurance Co. of Boston*, 566

F.3d 1, 9 (1st Cir. 2009); *Hackett v. Standard Ins. Co.*, 559 F.3d 825, 830 (8th Cir. 2009); *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1027 (9th Cir. 2008). A remand is similarly appropriate here because the district court's cursory reference to *Glenn* casts doubt on whether it properly analyzed Cigna's structural conflict. A remand will ensure that the court conducts in the first instance the balancing analysis that *Glenn* requires. We recognize that ultimately Cigna's conflict will tip the balance only if the district court concludes that this is a borderline case, *see Glenn*, 128 S.Ct. at 2351; *Jenkins*, 564 F.3d at 861-62, but after weighing Cigna's conflict together with factors such as its pursuit of the social security award and its willingness to discount Raybourne's subjective pain complaints, the court might view Raybourne's case as borderline. We thus follow the lead of our sister circuits and remand to allow the district court, in the first instance, to consider how heavily Cigna's conflict weighs in the abuse-of-discretion balance.

The judgment of the district court is VACATED and the case is REMANDED for further proceedings.