In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-1295 & 11-1427

EDWARD RAYBOURNE,

*Plaintiff-Appellee,*

*v.*

CIGNA LIFE INSURANCE
COMPANY OF NEW YORK,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 3205—**Robert W. Gettleman,** *Judge.*

ARGUED APRIL 5, 2012—DECIDED NOVEMBER 21, 2012

Before ROVNER, WOOD and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* The Social Security Administration ("SSA") found that Edward Raybourne was disabled under the agency's standards. The district court found that Raybourne was disabled under the terms of the long-term disability insurance policy he held with the defendant. The defendant insurance company found that he was not disabled. The district court

concluded that the company's denial of benefits was based on a conflict of interest rather than on the facts and the terms of the policy. We affirm.

**A.**

This is the second appeal in this case and we refer readers to our earlier opinion for a more complete detailing of the facts. *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444 (7th Cir. 2009) ("*Raybourne I*"). Electrodynamics, Inc. employed Edward Raybourne as a quality engineer for twenty-three years. The company established an employee welfare benefits plan that provided, among other things, coverage for long-term disability.[1] Cigna Life Insurance Company of New York ("Cigna") both insured and administered the group long-term disability plan ("Plan"). The Plan paid benefits for up to twenty-four months if the beneficiary's disability prevented him from performing the duties of his regular job. After twenty-four months, the Plan paid benefits only if the beneficiary was unable to perform all of the material duties of any occupation for which he was reasonably qualified based on his education, training and experience.

---

[1] We will ignore certain facts that are not determinative to the outcome in order to simplify the case. For example, Electrodynamics is a wholly-owned subsidiary of L-3 Communications Corp., Inc., and L-3 established the employee benefits plan at issue. A different insurer originally administered the plan, but all parties agree that Cigna is now the relevant insurer.

Raybourne suffered from degenerative joint disease in his right foot, a problem which caused him such severe pain that he endured four different surgeries in attempts to alleviate it. In 2003, he stopped working and underwent the first of the four surgeries. From December 2003 through February 2006, Cigna paid Raybourne long-term benefits under the Plan. Cigna then determined that, although Raybourne was not able to perform the duties of his job as a quality engineer, he was not disabled under the more stringent standard that applied after twenty-four months. When Cigna stopped paying benefits, Raybourne exhausted all administrative remedies and then sued the Plan for benefits under 29 U.S.C. § 1132(a)(1)(B). After the district court entered judgment in favor of Cigna, Raybourne appealed.

Five days before the district court ruled, the Supreme Court decided *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). In *Glenn*, the Court addressed the impact of structural conflicts of interest in reviewing plan decisions for abuse of discretion:

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.

*Glenn*, 554 U.S. at 108. In Raybourne's case, Cigna was responsible both for determining eligibility for long-term disability benefits and for paying the benefits to eligible participants. Yet the district court said little about the structural conflict of interest in Raybourne's case, commenting only that *Glenn* did not affect the court's analysis. We therefore remanded so that the district court could consider "how heavily Cigna's conflict weighs in the abuse-of-discretion balance." *Raybourne I*, 576 F.3d at 450.

On remand from this court, the district court first gave Cigna another opportunity to explain its decision denying long-term disability benefits. In particular, the court advised Cigna to address why the Plan disagreed with the SSA's finding of disability. The court ultimately rejected Cigna's "unconvincing" explanation for how the company determined that Raybourne was not disabled. First, the court considered Cigna's claim that the decision relied on a definition of "disability" in the policy that is different from the definition used by the SSA. The court found that the definitions were functionally equivalent, and that any minor difference could not explain the difference in result between Cigna's determination and the SSA's finding that Raybourne was in fact disabled.

The court next considered Cigna's explanation that its determination of disability under the policy is not governed by the "treating physician rule." That rule requires the SSA to give greater weight to the opinion of the claimant's treating physician's assessment than to

the opinion of a non-treating physician. Cigna at-
tributed Raybourne's disability finding by the SSA to
the agency's application of the treating physician rule.
Cigna explained that plan administrators are under
no similar duty. The district court found that, although
the administrative law judge ("ALJ") who decided
Raybourne's claim acknowledged the existence of that
rule, it was not determinative to the disability finding.
Instead, the ALJ based his decision on Raybourne's wil-
lingness to undergo four surgeries in attempts to
alleviate his pain, his continued need for narcotic pain
medications, his past work history and motivation, and
his credibility. In contrast, the district court found
that Cigna failed to account for any of these factors in
its disability determination, relying instead on the
report of a non-treating physician.[2]

Finally, the district court discounted Cigna's emphasis
on the SSA's initial rejections of Raybourne's claim. The
court commented that Cigna had no explanation for
why it rejected the SSA's final determination of disability,
noting that Cigna admitted the SSA's decision "has
no impact" on Cigna's decision. The court took this to
be an indication of the company's predisposition to

---

[2] The district court commented that the report failed to
mention two of the four surgeries. The court was mistaken.
Doctor J.S. Player, hired by Cigna to perform an Independent
Medical Evaluation ("IME") of Raybourne, acknowledged all
four of the recent surgeries and even acknowledged a fifth
surgery Raybourne underwent in 1980 to address degenera-
tive arthritis in his right foot.

reject the claim regardless of the facts. Moreover, Cigna's work on behalf of Raybourne during the earliest phases of his disability claim with the SSA demonstrated the company's willingness to reap the benefits of the SSA's decision when it benefitted Cigna and then ignore SSA's final determination when that decision was to Cigna's detriment.

The court ultimately concluded that Cigna's refusal to consider the SSA's final determination of disability and the insurer's determination that Raybourne was not disabled were founded more on a conflict of interest than on the facts and the terms of the Plan. The court also noted that Cigna had done little to implement safeguards to protect against the conflict of interest that is inherent when the same entity that determines eligibility for benefits is also liable for paying those benefits. The court found that this was a borderline case and that the conflict tipped the balance in favor of finding that the denial of benefits was arbitrary. The court therefore entered judgment in favor of Raybourne.

Raybourne subsequently moved for an award of attorneys' fees under 29 U.S.C. § 1132(g). The parties agreed on the amount of fees sought as well as the hourly rate to be used if fees were awarded. But Cigna contested the propriety of an award of fees, arguing that Raybourne was not entitled to fees, or should be awarded, at most, fees for the final phase of the litigation. The district court found that Raybourne achieved a complete victory and thus easily met the "some degree of success on the merits" standard described by the

Supreme Court in *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149 (2010). But Cigna contended that Raybourne must still meet the five-factor test this court applied prior to *Hardt*. Cigna also urged the court to decline to award fees because Cigna's litigation position was substantially justified.

The district court noted that *Hardt* neither adopted nor foreclosed the use of the five-factor test, but found that the substantial justification test had little utility given the Supreme Court's "some degree of success on the merits" test in *Hardt*. The court reasoned that, if a party is eligible for fees with only some degree of success, then the other party's position was likely substantially justified. The district court also questioned the continued validity of the five-factor test because the court believed it was simply a way to implement the substantial justification test. The court nonetheless found that, even if it applied the five-factor test or the substantial justification test, it would still award fees to Raybourne. Finally, the court rejected Cigna's claim that Raybourne was entitled to fees only for the final stage of the litigation. Because the case was not litigated in distinct phases, and because Raybourne had one claim and one theory throughout the case, the court determined that Raybourne was entitled to fees for the entire case. Cigna appeals.

## II.

On appeal, Cigna challenges both the merits decision and the award of fees. Cigna contends that the district

court erred in overturning the Plan administrator's benefits decision because the decision was based on substantial medical evidence. Cigna also contends that the record does not support a conclusion that its structural conflict of interest affected its decision. If we decide nonetheless to uphold that determination, then Cigna argues in the alternative that the district court abused its discretion in awarding fees because Cigna's litigation position was substantially justified.

**A.**

The parties first dispute the standard of review. Cigna contends that our review is *de novo* because the court ruled on the parties' cross-motions for summary judgment. Raybourne would like us to review the decision of the district court deferentially. According to Raybourne, the court's ruling was more akin to a judgment following a bench trial on a stipulated record. The first appeal came to us from the district court's ruling on cross-motions for summary judgment. After we remanded, the district court ordered supplemental briefing on the cross-motions for summary judgment. R. 85. After Raybourne filed his "Plaintiff's Supplemental Memorandum in Support of Entry of Judgment," Cigna filed a "Supplemental Brief in Support of Its Cross-Motion for Summary Judgment." R. 89 & 90. The district court then found that the previous decision of the Plan administrator lacked adequate reasoning and explanations for the decision. The court therefore remanded the case to the Plan administrator for further findings and explana-

tions of the decision denying benefits. The Plan administrator once again denied benefits, this time offering additional reasoning for the decision. Raybourne then moved for "Entry of Judgment" before the district court. After additional briefing, the district court granted Raybourne's motion. Although neither the parties nor the court specified the rule under which judgment was granted, the record is clear that the additional rounds of briefing that occured after our remand were addressed to the original cross-motions for summary judgment. We therefore will review the district court's judgment *de novo*. *Raybourne I*, 576 F.3d at 448; *Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). Because the Plan conferred on the administrator the discretion to interpret the terms of the Plan, we found in the first appeal that the district court was obliged to review the decision of the Plan administrator deferentially, for abuse of discretion only. *Raybourne I*, 576 F.3d at 449. *See also Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (when a plan administrator has discretion to determine eligibility or to construe plan terms, courts review those decisions under a deferential standard, seeking to determine only whether the decision was arbitrary and capricious). That standard continues to apply.

**B.**

In *Glenn*, the Supreme Court reiterated its holding that courts should be guided by principles of trust law in

determining the standard of review to apply to the decisions of plan administrators. *Glenn*, 554 U.S. at 110-11; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The Court noted that a benefits determination by a plan administrator is a fiduciary act, one in which the administrator owes a special duty of loyalty to the plan beneficiaries. *Glenn*, 554 U.S. at 111. Citing *Firestone*, the Court found that, if a plan gives discretionary authority to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Id*. The Court concluded that a plan administrator who both evaluates claims for benefits and pays benefits claims operates under the kind of conflict of interest to which *Firestone* referred.

The Court acknowledged that the conflict question is less clear when the plan administrator is not an employer paying the claims out-of-pocket but rather a large, professional insurance company. Nonetheless the Court found that, for ERISA purposes, the conflict must be factored into the analysis for two reasons. First, the Court found that an employer's conflict might extend to the selection of an insurance company, and that the employer might well be more interested in low rates than in accurate claims processing. Second, the Court noted that ERISA imposes higher-than-marketplace quality standards on insurers, requiring that administrators discharge their duties with respect to discretionary claims processing "solely in the interests of the participants and beneficiaries." *Glenn*, 554 U.S. at 115 (quoting 29 U.S.C. § 1104(a)(1)). Finally, the Court re-

marked that, although courts should treat employers and insurance companies alike with respect to the existence of the conflict, the insurer was free to demonstrate circumstances diminishing the significance or severity of the conflict.

Ultimately, "conflicts are but one factor among many that a reviewing judge must take into account." *Glenn* 554 U.S. at 116. The Court said that any one factor might act as a tie-breaker when the other factors are closely balanced. And a conflict may carry more weight when the "circumstances suggest a higher likelihood that it affected the benefits decision," as when an insurer has a history of biased claims administration. *Glenn*, 554 U.S. at 117. At the same time, the conflict would carry less weight when the insurer took active steps to reduce potential bias and to promote accuracy.

The specific situation presented in *Glenn* is remarkably similar to the facts and circumstances of Raybourne's claims experience with Cigna. In *Glenn*, the Court ultimately found that the insurer's conflict led to an arbitrary and capricious denial of benefits. The insurer initially encouraged Glenn to argue to the SSA that she was totally disabled, and recommended a lawyer to assist her in pursuing her claim before the SSA. The insurer then reaped the benefits of Glenn's success before the SSA by receiving the bulk of her back benefits as reimbursement for amounts the insurer had paid out, with the remainder of back benefits going to the lawyer the insurer recommended. Yet the insurer then ignored the SSA's finding of total disability when it

concluded that Glenn could perform sedentary work. The insurer also emphasized a medical report that favored the denial of benefits, de-emphasized reports to the contrary, and failed to provide its own vocational and medical experts with all of the relevant records. The Court found that, in these circumstances, there was nothing improper in concluding that the insurer's conflict of interest tipped the balance in favor of finding that the denial of benefits was arbitrary and capricious. *Glenn*, 554 U.S. at 117-18.

**1.**

When Raybourne initially applied for long-term disability benefits from Cigna, he also filed a disability claim with the SSA. Cigna hired Advantage 2000 Consultants, Inc. ("Advantage") to assist Raybourne in pursuing his claim with the SSA. Although Raybourne's claim was denied by the SSA in the first two rounds of the administrative process, the SSA found in each instance that Raybourne could not perform his occupation as a quality engineer. With the assistance of Advantage, Raybourne sought a hearing before an SSA Administrative Law Judge ("ALJ"). Under the Social Security statute, disability is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §423(d)(1)(A). Moreover, under Social Security disability standards:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). After his March 21, 2006 hearing before the ALJ, the SSA found that Raybourne was disabled under the SSA's stringent standard.

Unlike the single standard applied by the SSA, the Plan administered by Cigna had two standards, one to cover the first twenty-four months of disability and one to cover any period of disability beyond twenty-four months:

> An Employee will be considered Disabled if, because of Injury or Sickness,
>
>   1. he or she is unable to perform all the material duties of his or her regular occupation, or solely

due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.  after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

R. 26, at 1060. For the first twenty-four months of Raybourne's disability, Cigna and the SSA agreed that Raybourne could not perform the duties of a quality engineer, his regular occupation. Under the Plan, that finding was sufficient to receive benefits from Cigna, and Cigna in fact paid benefits to Raybourne during that time. But under SSA's standards, no benefits would be paid unless Raybourne could perform no job in the national economy, considering his age, education, and work experience. *See* 42 U.S.C. § 423(d)(2)(A). And Raybourne was not able to meet that proof until the hearing before the ALJ, where, as we noted above, he was assisted in making his case to the ALJ by Cigna's hired consultant, Advantage.

Cigna had something to gain by providing this assistance to Raybourne in pressing his claim to the SSA: once a participant qualified for benefits, the Plan paid the lesser of 60% of the claimant's monthly earnings or $15,000, *less any other income benefits received by the claimant, including Social Security disability benefits*. Thus, in May 2006, when the SSA granted Raybourne disability benefits retroactive to the start of his disability,

he was obliged to use the award of back benefits to repay Cigna for amounts the insurer paid to him during the initial period of his disability.

**2.**

In January 2006, prior to Raybourne's hearing before the ALJ, Cigna decided to order an independent medical examination ("IME") of Raybourne, in anticipation of the new, more stringent standard applied by the Plan to periods of disability greater than twenty-four months. Up to that point, all of the available medical evidence from Raybourne's physicians favored a finding of disability. Cigna engaged Dr. J.S. Player to perform the IME. After examining Raybourne on January 12, 2006 and reviewing his medical records, Dr. Player produced a report ("Report") that was sent to Cigna on January 18, 2006, and was marked received by Cigna on January 25, 2006.[3] Although Raybourne's treating physician, Dr. Ronald Sage,[4] concluded that Raybourne was disabled by his ongoing pain, Dr. Player determined that Raybourne was capable of performing

---

[3] The twenty-page, single-spaced Report is dated January 12, 2006, the same day that Dr. Player examined Raybourne. The Report includes an assessment of Raybourne's prior medical records and also an analysis of Dr. Player's own examination of Raybourne.

[4] Dr. Sage was a professor and Chief of the Podiatry Section of the Department of Orthopaedic Surgery and Rehabilitation at Loyola University Medical Center.

sedentary to light duty work with lifting, carrying, pushing and pulling up to twenty pounds. Dr. Player acknowledged that Raybourne required the use of a straight cane to reduce weight-bearing forces and that he should be restricted from walking or climbing stairs with the cane to no more than 2.5 hours per day.[5]

Two months after Cigna obtained this opinion that Raybourne was not disabled, Raybourne appeared before the ALJ with the assistance of Cigna's consultant, pressing his claim for disability with the SSA. Four months after Dr. Player opined that Raybourne was not disabled, the ALJ, who had not been made aware of Dr. Player's Report, found that Raybourne was in fact disabled. Cigna then recouped from the back benefits the money the insurer had paid to Raybourne during the first twenty-four months of his disability.

In the meantime, Cigna sent Dr. Player's Report to Dr. Sage for review. Dr. Sage agreed with the "facts and examination findings" of the Report but disagreed with Dr. Player's conclusion that Raybourne could return to work as a quality engineer. Dr. Sage stated that

---

[5] Dr. Player does not explain his seemingly paradoxical opinion that a person who requires a cane to reduce weight-bearing forces is capable of lifting and carrying twenty pounds. Presumably, he expected Raybourne to carry the load with the hand that was not employing the cane and believed that the cane would adequately reduce the additional load. On summary judgment, that is the most generous reading we can imagine for Dr. Player's opinion.

Raybourne suffered from "persisting disabling pain which has not responded to medical or surgical intervention." R. 26, at 799. Nonetheless, on March 1, 2006, three weeks *before* Cigna's consultant appeared with Raybourne before the ALJ, Cigna concluded that Raybourne was no longer disabled.

**3.**

Raybourne administratively appealed Cigna's March 1, 2006 decision. He submitted further documentation from Dr. Sage regarding his condition. Dr. Sage reported that Raybourne continued to suffer from chronic regional pain syndrome, osteoarthritis of his right foot, and neuritis of the posterior tibial nerve and its branches. Dr. Sage opined, "These findings are consistent with the patient's inability to work at any occupation requiring walking or standing or even focusing on sedentary activity because of the unremitting nature of his pain." R. 26, at 782-83. On May 26, 2006, three days after the ALJ found that Raybourne was disabled, Cigna upheld its prior decision to deny the claim. The letter detailing the reasons for the denial did not mention the ALJ's very recent conclusion to the contrary. Cigna rejected Raybourne's claim that he was unable to concentrate on sedentary work due to pain because the record contained no cognitive testing or mental status examination documenting an inability to concentrate. Cigna based this conclusion in part on the determination of an in-house non-examining physician, R. Norton Hall, who stated (in a conclusory,

two-sentence handwritten note) that the medical record contained no documented clinical evidence to support the restrictions imposed, presumably referring to the restrictions set forth by Dr. Sage. R. 26, at 886.

Raybourne filed another administrative appeal, submitting the favorable decision from the ALJ, the records of Advantage (the consultant retained by Cigna to assist Raybourne in his Social Security disability claim), and a current functional capacity assessment by Dr. Sage, who again concluded that Raybourne was incapable of engaging in any work. Raybourne extensively explained the significance of the ALJ's determination of disability. Cigna again sought the review of a non-examining, in-house physician, who supplied a very brief, handwritten note finding that the medical evidence did not support a cognitive deficit caused by pain. Cigna then denied Raybourne's second administrative appeal, again because there was insufficient clinical evidence supporting his claim that pain prevented him from performing sedentary jobs. Although Raybourne had focused extensively on the ALJ's finding of disability in his appeal, Cigna did not mention the ALJ's decision at all in its denial of the second administrative appeal, and made no attempt to explain why it was rejecting the contrary findings of the ALJ.

**4.**

After our remand, as we discussed above, the district court gave Cigna a second bite at the apple. The district court found that Cigna's failure to mention the

favorable decision of the SSA or explain the reasons for its disagreement with the ALJ's determination rendered Cigna's decision inadequate under ERISA's requirement that specific and understandable reasons for a denial be communicated to a claimant. The court concluded that the proper remedy for Cigna's inadequate explanation was a remand to Cigna so that the insurer could provide an adequate accounting of its reasoning.

In response to the district court's order, Cigna gave four reasons that the court should find that the insurer was not influenced by the structural conflict of interest that is present when the same entity makes the benefits determination and pays the benefits. First, Cigna noted that the Plan and the Social Security Act contain different definitions of disability. Although the definitions are not identically worded, we agree with the district court's conclusion that the definitions are functionally equivalent. Under Social Security standards, a person must have a mental or physical impairment that results in an "inability to engage in any substantial gainful activity." The impairment must have lasted (or will last) for a year or more, or be expected to result in death. 42 U.S.C. § 423(d)(1)(A). In defining "substantial gainful activity," the Social Security Act considers the applicant's age, education, and experience, and includes any kind of substantial gainful work which exists in the national economy, regardless of whether any jobs or vacancies exist in the immediate area in which the applicant lives. 42 U.S.C. § 423(d)(2)(A). Under the Plan, after twenty-four months, a person is considered disabled if he or she is unable to perform all the material duties

of any occupation for which he or she may reasonably become qualified based on education, training or experience. Cigna fails to draw any meaningful distinction between the two standards as applied to Raybourne. The district court rightly rejected this explanation.

Cigna next contended that the Social Security regulations that govern disability determinations do not govern ERISA determinations. Among the differences Cigna pointed out were SSA regulations that require ALJs to give more weight to the opinion of a treating physician than to that of a non-treating physician. Cigna also cited the five-step sequential evaluation process used by ALJs to determine whether a claimant is disabled, and the assumption that claimants over age fifty who cannot perform their past occupations are less likely to be able to find alternate work than claimants under fifty. According to Cigna, the application of these rules and regulations led to the difference in results between the ALJ's favorable decision and Cigna's determination.

Although the ALJ cited all of the relevant regulations, none of these regulations played a determinative role in the ALJ's decision. For example, the ALJ did not give more weight to the treating physicians' opinions because they were treating physicians. He expressly gave them more credit because those opinions were more consistent with the evidence as a whole than the medical opinion of the state agency, the only party providing a contrary opinion. And although Social Security regulations do give an advantage to workers

who are disabled after age fifty, Raybourne was not yet age fifty on the date his disability was established.

In evaluating the effect of Raybourne's pain on his ability to work, the ALJ did not defer to a regulation requiring him to give more weight to the treating physician's opinion on that matter. Instead, he considered the treating physician's opinion as one factor in evaluating Raybourne's pain. He relied heavily on the documented medical evidence of the source of Raybourne's pain, his credible subjective descriptions of his pain, his willingness to undergo four surgeries in attempts to alleviate his pain, his need for strong narcotic pain medications, his full compliance with all treatment recommendations, and his past work history, which demonstrated a strong motivation to work. In short, the ALJ found Raybourne to be credible on the issue of limiting pain in light of all of the objective medical evidence and his past work history.

> We do not suggest that a Social Security disability finding, multiple and unsuccessful surgeries for pain relief, and a heavy pain medication regimen will together always compel an award of benefits. But with this evidence in the record, a plan administrator must address it and provide a reasonable explanation for discounting it. . . . In this case, the Social Security award, the surgeries, and the medication provide strong evidence in support of a finding of continuing disability. [The administrator's] explanations for discounting them are not supported by the record.

*Holmstrom*, 615 F.3d at 773. In the instant case, Cigna did not address any of this analysis by the ALJ, instead simply pointing to regulations that were acknowledged and recited, but were not necessary to the ALJ's determination. As we noted in *Holmstrom*, a plan administrator may not simply ignore this evidence but must address it and provide a reasonable explanation for discounting it, especially when the administrator operates under a structural conflict of interest.

Cigna next noted that, at the time Cigna terminated Raybourne's benefits, the SSA had already twice denied Raybourne's claim for Social Security disability. Its decision was thus consistent with the SSA's decisions up to that point. Cigna also argued that it paid benefits to Raybourne for sixteen months after the SSA first determined that Raybourne was not disabled, a decision that departed from the SSA's analysis to Raybourne's benefit. Cigna maintained that SSA's original denial of Raybourne's claim does not prove that Cigna was mistaken when it found initially that Raybourne was disabled under the Plan. Likewise, Cigna contends that the SSA's later approval of Raybourne's claim does not prove that Cigna was wrong to deny it.

This argument makes little sense. At the time that Cigna initially approved disability benefits for Raybourne, he was in the first twenty-four months of his disability, a period when the Plan paid benefits to claimants who could not perform their current job. At that time, Cigna and the SSA *both* found that Raybourne was not capable of returning immediately to his former

work. Although that finding was sufficient to qualify for benefits under the Plan, it was not sufficient to qualify for Social Security disability payments. There was thus no inconsistency between the conclusions of the SSA and Cigna during the first twenty-four months of Raybourne's disability.

Cigna is correct that inconsistency between its final determination and the ALJ's final decision does not prove that Cigna was mistaken. But that is not the issue. The issue is whether Cigna has a plausible explanation for the difference in the final determinations of disability, an explanation that would lead a reviewing court to conclude that the difference was not based on the structural conflict of interest that is present here. Nothing in Cigna's first three arguments points to any legitimate distinction, and so we turn to the last explanation Cigna offered to the district court.

Cigna points out that the ALJ based his determination on a different body of evidence than was available to Cigna. In particular, the ALJ did not have access to Dr. Player's IME, which, as we discussed above, concluded that Raybourne was capable of certain light duty work. Although Cigna contends that this explains the difference in the results, in this instance, it simply raises more questions for a reviewing court. Cigna obtained this report before Raybourne appeared before the ALJ. At the same time that Cigna was deciding that Raybourne was not disabled, Cigna's consultant, Advantage, was representing to the SSA (presumably without the knowledge of Dr. Player's Report) that

Raybourne was disabled. Cigna was then able to reap the benefits of its consultant's work by recouping payments it made to Raybourne during his initial period of disability, while simultaneously denying Raybourne any future benefits.

This is the very scenario that the Supreme Court found indicative of "procedural unreasonableness" in *Glenn.* 554 U.S. at 118. *See also Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009) (noting that the likelihood that the conflict of interest influenced the decision is the decisive consideration, as indicated by any procedural unreasonableness in the plan administrator's handling of the claim). The Court also concluded that this scenario justified the reviewing court in giving more weight to the conflict because the seemingly inconsistent positions taken by the insurer were both financially advantageous to the insurer. *Glenn*, 554 U. S. at 118. In the end, Cigna failed to adequately explain why it gave more weight to Dr. Player's Report than to all of the medical evidence to the contrary produced by Raybourne's treating physician. Without providing any rational explanation for doing so, Cigna emphasized the lack of a report on cognitive deficiencies over well-documented medical evidence supporting Raybourne's claim of disabling pain. Moreover, Cigna highlighted the fact that the ALJ did not have the benefit of Dr. Player's Report. Of course, it was not to Cigna's benefit for the ALJ to see the Report before ruling on Raybourne's claim. Dr. Player's Report became the determinative piece of evidence for Cigna only when it was financially advantageous to the insurer. In the end, all of the

doctors agreed about the objective medical facts of Raybourne's condition. The only question was whether Raybourne's pain was sufficient to prevent him from working any job. Cigna's expert, Dr. Player, believed that Raybourne was magnifying his complaints about pain; Raybourne's treating physicians and the ALJ found him credible, concluding that the objective medical evidence was consistent with his subjective reports of disabling pain. Cigna has given no rational explanation for crediting Dr. Player over Raybourne's physician or over the credibility finding of the ALJ, both of which were supported by substantial medical evidence documenting the source of Raybourne's pain. Selecting one opinion over another without a rational explanation can be described as arbitrary. Arbitrarily crediting one opinion over all others when a financial incentive is at stake is the very harm the *Glenn* Court sought to avoid from structural conflicts of interest in ERISA claims determinations.

Under *Glenn*, a court may use a structural conflict of interest to break a tie in a close case "where circumstances suggest a higher likelihood that it affected the benefits decision." 554 U.S. at 117. *See also Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861-62 (7th Cir. 2009) (under *Glenn*, when the case is borderline, the inherent conflict of interest can push the analysis over the edge towards finding that the administrator's decision was capricious). Such appears to be the case here, and like the district court, we conclude that Cigna's denial of benefits was not supported by substantial medical evidence but instead was the result of

a structural conflict of interest. We therefore affirm the court's decision on the merits, and turn to the question of attorneys' fees.

## C.

ERISA provides that courts may award attorneys' fees to either party in the court's discretion:

> (g) Attorney's fees and costs; awards in actions in-volving delinquent contributions (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). Although many courts initially interpreted this fee-shifting provision as being limited to "prevailing parties," the Supreme Court clarified that a court may, in its discretion, award fees and costs to either party, so long as the fee claimant has achieved "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2152. The Court acknowledged the "American Rule" for attorneys' fees as the "bedrock principle" that each litigant pays his own attorneys' fees, win or lose, unless a statute or contract provides otherwise. *Hardt*, 130 S. Ct. at 2156-57. Some fee-shifting statutes provide that fees may be awarded only to a prevailing party, a substantially prevailing party, or a successful litigant. *See Hardt*, 130 S. Ct. at 2157 n.3, n.4, & n.5. The ERISA provision, how-ever, contains no such limitation, instead deferring to the court's discretion. The Court noted that a judge's

discretion is not unlimited, and that a party would be eligible for an award of attorneys' fees only if the party could demonstrate that it achieved some degree of success on the merits. *Hardt*, 130 S. Ct. at 2158.

The Court acknowledged that some courts of appeals applied a five-factor test in determining whether to award attorneys' fees, and the Court expressly declined to "foreclose the possibility that once a claimant has satisfied this requirement [of achieving some success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors" adopted by those courts of appeals. We have long employed the so-called five-factor test, as well as a standard that we have labeled the substantial justification test. *See Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 828-30 (7th Cir. 1984), *overruled on other grounds*, *McCarter v. Ret. Plan for Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649, 652 (7th Cir. 2008). *See also Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505-06 (7th Cir. 2011) (setting forth both the five-factor test and the substantial justification analysis); *Pakovich v. Verizon Ltd. Plan*, 653 F.3d 488, 494 (7th Cir. 2011) (noting our continued use of the five-factor test); *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011) (detailing both the five-factor test and the substantial justification test). Since *Hardt*, we have largely declined to reconsider whether the *Bittner* five-factor test remains applicable until we are confronted with a case where the answer makes a difference to the outcome. *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th

Cir. 2011) (whether the *Bittner* test survived *Hardt* is an "issue we can avoid until the answer matters"). As we determine below, this is not a case where the answer to that question matters. We have noted only one change in our analysis following *Hardt*: we have determined that the language in our prior opinions declaring that a showing of bad faith is vital to a fees award under section 1132(g)(1) did not survive *Hardt*. *Loomis*, 658 F.3d at 674.

Without the benefit of our analysis following *Hardt*, the district court remarked that the five-factor test and the substantial justification test did not have much utility after the Supreme Court's decision in *Hardt*. The court nevertheless applied the five-factor test (at least in part) and concluded that an award of fees was appropriate. We review the district court's decision for abuse of discretion. *Hardt*, 130 S. Ct. at 2158-59; *Holmstrom*, 615 F.3d at 779 (we review a district court's decision to award or deny attorneys' fees for abuse of discretion and will not disturb the district court's finding if it has a basis in reason). Cigna does not contest the district court's conclusion that Raybourne achieved some success on the merits and so we turn to the five-factor test.

Under that test, a district court considers: (1) the degree of the offending parties' culpability;[6] (2) the degree of the

---

[6] In many of our cases, we framed this factor as the degree of the offending parties' culpability *or bad faith*. *See e.g., Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 671 (7th Cir. 2007).

(continued...)

ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Kolbe*, 657 F.3d at 505-06; *Pakovich*, 653 F.3d at 494 n.2; *Bittner*, 728 F.2d at 828. We have noted that these five factors are used to structure or implement the substantial justification test, and that the two tests essentially pose the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent? *Kolbe*, 657 F.3d at 506 (collecting cases).

The district court found that the first factor had little bearing on the issue except to the extent that the court found that Cigna was acting under a conflict of interest that affected its decision. We concur with the district court on the first factor; if anything, this factor weighs in favor of awarding fees because we have concluded that Cigna was influenced by its structural conflict of interest when it denied benefits to Raybourne. The second factor, the court determined, weighed in favor of an award of fees. Cigna is well-situated to pay the fees, and the award will not deplete Plan assets. *See Bittner*, 728 F.2d at 829 (noting that the second factor

---

[6] (...continued)

As we noted above, though, after *Hardt*, we have abandoned the idea that a finding of bad faith is vital to an award of fees.

addresses in part whether an award of fees to a plaintiff will deplete Plan assets to the detriment of other beneficiaries).

The court found that the third factor also weighed in favor of an award of fees because other plan administrators would pay more heed to conflicts of interest and perhaps have an incentive to put in place procedures that would lessen the impact of such a conflict. The court found that the fourth factor, benefits to other members of the Plan, was largely irrelevant in an individual dispute such as this, except to the extent that an award of fees here would provide plans with an incentive to take into account decisions of the SSA awarding disability benefits. As with the first factor, we find no error in the court's analysis of the second, third and fourth factors.

Quoting our opinion in *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007), the district court then opined that the fifth factor, relative merit, was "an oblique way of asking whether the losing party was substantially justified," in contesting an opponent's claim or defense. Because of this, the district court believed the fifth factor (together with the substantial justification test) should be disregarded. This was error. We have not retracted the substantial justification test. Nor have we yet disavowed the five-factor test that courts use to implement the same basic analysis.

Nevertheless, we believe the error was harmless in the circumstances presented here. The district court found that Cigna's failure to pay was based more on a conflict

of interest than on the facts or the language of the policy. It is clear from the district court's discussion of the first four factors that the court believed that an award of fees was appropriate and that Cigna's litigation position was not substantially justified as we have used that term. Cigna failed in two opportunities before the district court to explain why it supported a finding of disability before the SSA when that finding was to the company's financial advantage, and disregarded the SSA's finding of disability when it was not to Cigna's advantage. Cigna also failed to explain this disparity to the claimant when it denied the claim, even after Raybourne took pains to explain the significance of the ALJ's decision to Cigna in the administrative appeal process. Indeed, until forced to discuss the ALJ's ruling by the district court, Cigna simply ignored the inconvenient finding. Cigna then drew distinctions that failed adequately to explain why the company's finding differed from that of the ALJ. When comparing the relative merits of Cigna's position and Raybourne's, there is little doubt regarding how the district court would resolve the issue. Even without considering the fifth factor, the district court leaned heavily in favor of awarding fees to Raybourne. An assessment by the district court of the relative merits of the parties' positions would not change that conclusion. In fact, although the court nominally declined to apply the fifth factor or the substantial justification test, the court remarked that "whether or not the substantial justification or five-factor test remain viable, plaintiff is entitled to fees." *Raybourne v. Cigna Life Ins. Co.*, No. 07 C 3205, 2011 WL

528864, at \*2 (N.D. Ill. Feb. 8, 2011). A remand would be futile when the district court has so clearly indicated how it would rule. *See Highway J Citizens Grp. v. Mineta*, 349 F.3d 938, 960 (7th Cir. 2003) (appellate court need not remand a case if doing so would be futile). We find no meaningful error in the district court's decision to grant fees in favor of Raybourne, and so we find no abuse of discretion.

The only remaining question is whether the court abused its discretion when it granted Raybourne his fees for the entire litigation instead of only the last phase, where he finally prevailed. It is true that Raybourne lost a few skirmishes along the way, but in the end, his victory was complete. As the court noted, Raybourne had one claim and one theory throughout the litigation. He sought to reverse the company's determination that he was no longer eligible for long-term disability benefits and he achieved that goal in its entirety. We see no abuse of discretion in the court's decision to award him fees for the entirety of the litigation.

AFFIRMED.