In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1861

LEE ANN PRATHER,

*Plaintiff-Appellant,*

*v.*

SUN LIFE AND HEALTH INSURANCE COMPANY (U.S.),

*Defendant-Appellee.*

Appellant's Petition for Award of Attorneys' Fees

MARCH 30, 2017

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff's decedent, Jeremy Prather, was employed by a company that had obtained a Group Insurance Policy from Sun Life which provided accidental death and dismemberment coverage for the company's employees, in the amount of $92,000 for Prather. The policy limited coverage to "bodily injuries … that result directly from an accident and *independently of all other causes*." The clause we've italicized was the focus of an appeal from the district court, which had granted summary judgment for

Sun Life, which had invoked the clause to deny the payment of death and dismemberment coverage to Prather's survivor on the ground that Prather's death had not been the exclusive result of an accident—it had also been the result of "complications from surgical treatment." Prather's widow brought suit "to recover benefits due to [her]" under the plan. 29 U.S.C. § 1132(a)(1).

On July 16, 2013, Prather, age 31, had torn his left Achilles tendon playing basketball. He was operated on to repair the torn tendon six days later. The surgery was uneventful and he was discharged from the hospital the same day. He returned to work and was reported as doing well in a follow-up visit to his surgeon on August 2, but four days later he collapsed at work, went into cardiopulmonary arrest, and died the same day as a result of a deep vein thrombosis (blood clot) in the injured leg that had broken loose and traveled through the bloodstream to a lung, thus becoming a blood clot in the lung—that is, a pulmonary embolism—which caused cardiac arrest and sudden death.

Sun Life's position was and is that the pulmonary embolism and ensuing death were consequences not of—at least not entirely of—the accident to Prather's Achilles tendon, but of the surgery, and therefore was not covered by the insurance policy, which as we said covered only "bodily injuries … that result directly from an accident and *independently of all other causes*." The district court granted summary judgment in favor of Sun Life, Prather's widow appealed, and we reversed, see *Prather v. Sun Life & Health Ins. Co.*, 843 F.3d 733 (7th Cir. 2016). We reasoned that Sun Life had failed to make any plausible showing that the surgery on Prather's ankle, rather than the accident that necessitated the surgery,

had caused his death. We instructed the district court to enter judgment in favor of the plaintiff, as in *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1052 (7th Cir. 1991).

Prather's widow has now moved us to award her the attorneys' fees (that is, to order Sun Life to reimburse her for those fees), amounting to $37,170, that she incurred in her successful suit against the insurance company. The suit had been based on the Employee Retirement Income Security Act of 1974 (ERISA), the federal law that sets minimum standards for certain private pension and health plans, in order to provide financial protection for individuals enrolled in these plans (as Jeremy Prather had been) and their survivors (Prather's widow, in this case). See 29 U.S.C. § 1132(a)(1). Specifically, she seeks the fees under section 1132(g)(1), which authorizes a court in its discretion to "allow a reasonable attorney's fee and costs of action to either party," provided the party awarded the fee and costs had (the Supreme Court said in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)), "achieved some success on the merits." The plaintiff, Prather's widow, achieved not some, but complete, success on the merits of her suit. That makes it an easy case for us to exercise discretion favorably to her, and thus award her her attorneys' fees and costs.

We are mindful that a number of judicial opinions embrace a "five factor" test for whether to award attorneys' fees and costs in cases such as this. They are "(1) the degree of the offending parties' culpability; (2) the degree of the ability of the offending parties to satisfy an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on

members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Raybourne v. CIGNA Life Ins. Co. of New York*, 700 F.3d 1076, 1090 (7th Cir. 2012); see also *Jackman Financial Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011).

We have no information about factor 4, so let's forget it. All the other factors (four in number) favor the plaintiff in this case: there is no doubt of Sun Life's culpability (factor 1), or of its ability to pay without jeopardizing its existence (it is a multibillion dollar company) (factor 2); the award of attorneys' fees against it is likely to give other insurance companies in comparable cases pause (factor 3); and a comparison of the relative merits of the contending parties clearly favors the plaintiff (factor 5). The score is 4 to 0 in favor of the plaintiff. Prather's widow doesn't have the big pockets of the insurance company and would have to pay her lawyer out of whatever money she recovered from it. Even though she had a meritorious claim, the insurance company denied it without medical evidence and then put her through all the hoops of litigation. Fee-shifting under ERISA is entirely appropriate for situations like this.

It remains to consider Sun Life's challenge to the amount of the award of attorneys' fees ($37,170). We are persuaded by its argument that 3.6 hours of the attorney's work should be subtracted because they were hours devoted to simple administrative tasks such as preparing the table of contents and appendix of the brief, and formatting the brief; 4.4 hours incurred by failing to delegate portions of the research, drafting, and editing of the brief to a more junior attorney; and 2 hours for preparation for oral argument, which was too much time given the lawyer's experience in arguing in

the courts of appeals. The result of these adjustments is to reduce the number of hours on which the $37,170 fee award is based from 59 to 49, yielding (with a further adjustment, reducing the attorney's billing rate from $630 to $620, on the ground that the $630 rate reflected an excessive rate increase of 5 percent from his hourly rate of $600 in 2015) a total fee award of $30,380—which is the amount we award the plaintiff.

So ordered.