In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 10-2284 & 10-3046

KOLBE & KOLBE HEALTH & WELFARE
BENEFIT PLAN, *et al.*,

*Plaintiffs-Appellants,*

*v.*


THE MEDICAL COLLEGE OF WISCONSIN,
INC., *et al.*,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 09-CV-205—**Barbara B. Crabb,** *Judge.*

ARGUED JANUARY 10, 2011—DECIDED SEPTEMBER 2, 2011


Before, FLAUM and WILLIAMS, *Circuit Judges*, and
HERNDON, *District Judge.*\*

---

\* The Honorable David R. Herndon, Chief Judge, United States
District Court for the Southern District of Illinois, sitting by
designation.

HERNDON, *District Judge.*  This is a suit by Kolbe & Kolbe Welfare Benefit Plan (the Plan), a self-funded employee welfare benefit plan, and its administrator and plan fiduciary, Kolbe & Kolbe Millwork Company (Kolbe & Kolbe) (collectively plaintiffs unless context dictates otherwise),[1] for the right to recover amounts the Plan paid on behalf of an uncovered person under the Plan to The Medical College of Wisconsin, Inc. (Medical College) and Children's Hospital of Wisconsin, Inc. (Children's Hospital) (collectively defendants unless context dictates otherwise). Plaintiffs brought suit alleging claims under the Employee Retirement Income Security Act of 1974 , 29 U.S.C. §§ 1001, *et seq.* (ERISA), the federal common law of ERISA, and under state law. Over the course of several orders, the district court dismissed the complaint for failure to state a claim upon which relief could be granted and also granted attorney fees to the defendants. The attorney fees were the subject of a separate judgment and appeal (10-3026), however, this court, on its own motion, consolidated the appeals for briefing and disposition. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

---

[1] Only Kolbe & Kolbe is a fiduciary and therefore a proper plaintiff under § 502(a)(3) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(3), but we will ignore that detail. See *Wal-Mart Stores, Inc. v. Wells,* 213 F.3d 398, 400 (7th Cir. 2000); *Admin. Comm. v. Gauf,* 188 F.3d 767, 770 (7th Cir. 1999).

**I. BACKGROUND**

According to the plaintiffs' second amended complaint, the facts of which we accept as true, *Dawson v. Newman*, 419 F.3d 656, 658 (7th Cir. 2005), Kolbe & Kolbe, sponsors and administers the Plan, a self-funded welfare benefit plan covered by ERISA that Kolbe & Kolbe offers to its employees. Scott Gurzynski was a Kolbe & Kolbe employee who was covered under the Plan. On approximately August 20, 2007, Gurzynski submitted to Kolbe & Kolbe an employee enrollment change form, seeking to add his daughter, K.G., born earlier that year, to the Plan. On the form, however, Gurzynski left several sections blank that were needed to determine whether his daughter would be covered as an eligible dependant under the Plan. Specifically, he did not indicate on the form whether the child resided with the employee, was dependent upon the employee for more than fifty percent support and maintenance, and whether the child qualified to be claimed as a tax exemption on the employee's or the employee's spouse's federal income tax return.

Because Gurzynski's employee enrollment change form was incomplete, Kolbe & Kolbe made numerous inquiries of Gurzynski to try and obtain the information necessary to determine whether K.G. was eligible to be covered under the Plan. Over three months later, on approximately November 28, 2007, Gurzynski informed Kolbe & Kolbe over the telephone that K.G. did not reside with him but rather lived with K.G.'s mother and that he was not claiming K.G. as a tax exemption. Ap-

proximately two days later, Kolbe & Kolbe met with Gurzynski and informed him that it needed additional information and requested Gurzynski to send it to Kolbe & Kolbe as soon as possible. Thereafter, Kolbe & Kolbe made numerous attempts to solicit from Gurzynski the information Kolbe & Kolbe deemed necessary to make a coverage determination. After several months of inquiry, Kolbe & Kolbe reviewed the still inadequate information that it was able to obtain from Gurzynski and denied Gurzynski's request for coverage under the Plan for K.G. On June 24, 2008, over ten months from the date of Gurzynski's application, Kolbe & Kolbe sent Gurzynski notification of this decision by letter, informing Gurzynski that K.G. was not eligible for coverage during 2007 and that any claims submitted to the Plan since January 1, 2007, would be reprocessed. No appeal of this decision was ever filed.

The Plan contained a "Right to Request Overpayments" provision. That provision provided as follows:

"The Plan reserves the right to recover any payments made by the Plan that were:

- Made in error; or

- Made after the date the person should have been terminated under this Plan; or

- Made to any Covered Person or any party on a Covered Person's behalf where the employer determines the payment to the Covered Person or any party is greater than the amount payable under this Plan.

The Plan has the right to recover against Covered Persons if the Plan has paid them or any other party on their behalf."

The Plan defined "Covered Person" as "an Employee or Dependent who are [sic] enrolled under this Plan." Both the definition of "Employee" and "Dependent" direct to "see [the] Eligibility and Enrollment section of this [Summary Plan Description.]"

From the time Gurzynski's form was submitted, and before, until the time the decision was made to deny coverage, K.G. was treated as an inpatient at Children's Hospital by physicians of the Medical College on at least four separate occasions (August 3, 2007, September 27, 2007, January 4, 2008, and February 8, 2008). K.G. received discounted treatment from Children's Hospital and Medical College because both defendants had entered into physician or provider agreements (the provider agreements) with third-party network providers[2] who had entered into member or service agreements with Kolbe & Kolbe[3] whereby Kolbe & Kolbe agreed to pay a fee in exchange for discounted health services that the third-party network providers had procured with

---

[2] Medical College entered into a physician agreement with North Central Health Care Alliance, Inc. (NCHA), and Children's Hospital, an affiliate of Children's Health System, entered into a provider agreement with Bowers & Associates, Inc. (Bowers).

[3] Kolbe & Kolbe entered into a member agreement with NCHA and a physician agreement with Bowers.

Medical College and Children's Hospital in the provider agreements. Under the terms of the provider agreements, Medical College and Children's Hospital agreed to provide "Covered Services" to eligible Plan employees and their dependents. "Covered Services" was defined to mean those medical services covered under a Plan, subject to any limitations on such coverage as may contained in such Plan.[4] Kolbe & Kolbe was listed as a third-party beneficiary of the provider agreements.

Upon each admission to Children's Hospital, either K.G.'s mother or Gurzynski executed a Children's Hospital and Health System (CHHS) agreement on behalf of K.G., which included a "financial agreement" provision that stated as follows: "I hereby assign all insurance benefits, to which the patient is entitled, to CHHS or to any physician or provider who may provide care to the patient during treatment. I understand that I am financially responsible to the above providers for charges not covered by insurance."

Following K.G.'s treatment, Medical College and Children's Hospital submitted invoices and requests for payment to the Plan.[5] The Plan made payments in the amount of $472,357.84 to Medical College and $1,199,538.58

---

[4] The provider agreements are not entirely the same, but for purposes of our discussion, noting their differences would not be beneficial to our analysis.

[5] In fact, payments were submitted and made through the Plan's third-party administrator, United HealthCare Services, Inc., but for the sake of clarity we refer only to the Plan.

to Children's Hospital. Because Kolbe & Kolbe determined that K.G. was not covered under the Plan, however, Kolbe & Kolbe made demands to Medical College and Children's Hospital to return all payments made by the Plan. Both Medical College and Children's Hospital refused, leading to this lawsuit.

On April 6, 2009, plaintiffs filed their complaint, and on May 4, 2009, defendants filed a motion to dismiss. Prior to the court ruling on that motion, plaintiffs filed an amended complaint and defendants filed a motion to dismiss the amended complaint, specifically plaintiffs' § 502(a)(3) count under ERISA. Defendants attached the Plan in support of its motion. On October 6, 2009, the court entered an opinion and order, concluding "that plaintiffs have not stated a plausible claim for relief under § 502(a)(3) . . . [but allowed] them an opportunity to add to their complaint factual allegations that would show that they have plausible grounds for asserting an equitable lien against defendants." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 2009 U.S. Dist. LEXIS 93067, at *2 (W.D. Wis. Oct. 6, 2009). The court also noted that "ordinarily, in ruling on a motion to dismiss, under Rule 12(b)(6), the court may consider only the complaint," but concluded that "in cases like this one, in which plaintiffs have referred to a document . . . in the complaint and the document is central to the claims at issue, the court may consider it as part of the pleadings." *Id.* at *3 (citing FED. R. CIV. P. 10(c)). Thus, the court also considered the Plan defendants submitted and ordered plaintiffs "to file copies of any agreements between them that would bear on plain-

tiffs' right to pursue equitable relief, together with any supplemental briefing they wish to submit." *Id.* at *3, *20.

On October 21, 2009, plaintiffs filed their second amended complaint, seeking to recover under three theories: (1) equitable relief under § 502(a)(3) of ERISA; (2) an independent cause of action under the federal common law of unjust enrichment; and (3) relief for breach of contract under state law. Attached to the complaint were nine exhibits: a physician agreement between Medical College and NCHA; a member agreement between Kolbe & Kolbe and NCHA; a provider agreement between Children's Hospital[6] and Bowers; a physician agreement between Children's Medical Group and Bowers; a services agreement between Bowers and Kolbe & Kolbe; and four CHHS agreements, two of which were signed by K.G.'s mother and two signed by Gurzynski.

Defendants filed a motion to dismiss the second amended complaint, specifically plaintiffs' claim under § 502(a)(3) of ERISA. On November 17, 2009, the court found that plaintiffs had failed to state a claim upon which relief could be granted under § 502(a)(3) because they were seeking legal as opposed to equitable relief. The court then gave the parties an opportunity to submit briefs on the question of whether plaintiffs had a viable federal common law claim of unjust enrich-

---

[6] In fact, it was between Children's Health System and its affiliated entities, which includes Children's Hospital and, Bowers.

ment. The parties filed supplemental briefs and on February 9, 2010, the court entered an order finding that plaintiffs could not bring a federal common law claim for unjust enrichment because plaintiffs were seeking legal relief precluded by ERISA. This left plaintiffs' state law breach of contract claims, which the court again allowed the parties to brief. The parties did so, and on April 29, 2010, the court entered an order finding that plaintiffs could not pursue their state law claim because the claim clearly related to the Plan and was therefore preempted by ERISA.

Defendants then moved for attorney fees under ERISA § 502(g)(1), which the court also granted. Plaintiffs timely appealed, contending that the district court erred in dismissing each of their claims and in awarding defendants attorney fees because plaintiffs' position was substantially justified. The Wisconsin Association of Health Underwriters has filed a brief in support of plaintiffs as *amicus curiae*. We address each argument in turn.

## II. STANDARD OF REVIEW

"We review the grant of a motion to dismiss for failure to state a claim *de novo*." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citing *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010)). "'[E]valuating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor.'" *Reynolds*, 623 F.3d at 1146 (quoting *Reger Dev. LLC*, 592 F.3d at 763). We are not,

however, bound to accept as true a legal conclusion couched as a factual allegation. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

"To survive a motion to dismiss, the plaintiff must do more than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Reynolds*, 623 F.3d at 1146 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937,1949 (2009)). "The plaintiff need not, however, plead 'detailed factual allegations.' " *Reynolds*, 623 F.3d at 1146 (citing *Ashcroft*, 219 S. Ct. at 1949).

### III. PLAINTIFFS' § 502(A)(3) CLAIM

The district court dismissed plaintiffs' ERISA § 502(a)(3) claim[7] for failure to state a claim for equitable relief under ERISA, finding that plaintiffs were left with only a claim for legal relief, that is, the enforcement of a contractual obligation to pay money. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 2009 U.S. Dist. LEXIS 107427, at *6 (W.D. Wis. Nov. 17, 2009). We find that while the district court was correct to dismiss plaintiffs' claim under ERISA § 502(a)(3), we reach this conclusion on different grounds.

Section 502(a)(3) permits participants, beneficiaries, and fiduciaries to bring a civil action "to obtain other

---

[7] Throughout this opinion we refer to § 502(a)(3), the more common practice, and the official cite, 29 U.S.C. § 1132(a)(3), interchangeably.

appropriate equitable relief . . . to redress [violations of the plan] . . . or . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). In other words, this section allows a plan fiduciary, such as plaintiffs (subject to footnote 1, regarding fiduciaries), to bring claims in equity to enforce provisions of the plan, but not claims at law. Throughout this litigation, plaintiffs have pointed to its overpayment provision as the "term of the plan" it sought to enforce. *Id.* But the overpayment provision's clear language demonstrates that it has nothing to do with this litigation. The provision reserves for plaintiffs "the right to recover any payments made by the Plan that were: . . . [m]ade in error." But it further specifies that it reserves the "the right to recover against *Covered Persons* if the Plan has paid them or any other party on their behalf." (Emphasis added). The Plan defines "Covered Person" as "an Employee or Dependent who are [sic] enrolled under this Plan."

Based on that language, plaintiffs have pled its § 502(a)(3) claim out of court. The premise of its allegation is that K.G. is not and never was a Covered Person. Plaintiffs concede in its pleadings that its payments to defendants were for services that were not rendered to a Covered Person, "that is an eligible Employee or eligible Dependent Child, under the terms of the Plan." Also, plaintiffs nowhere allege that K.G. was ever "enrolled" under the Plan, as that term appears to be used in the definition of "Covered Persons." Although we find no definition of that term in the record, plaintiffs own allegations indicate that K.G. was never "enrolled". It claims as the basis of its suit that K.G. was eventually

denied coverage because her father *never completed* the "Employee Enrollment/Change Form."

Thus, there is no way for defendants, or even K.G., for that matter, to have been a "Covered Person" for the purposes of medical treatment K.G. received, and thus for the payments allegedly "made in error." Accordingly, the "term" of the Plan that plaintiffs allegedly seek to "enforce" through § 502(a)(3) has nothing to do with this suit. That repayment provision applies to "Covered Persons," not to individuals it claims were never Covered Persons and not to third parties who provided medical services to individuals who were never Covered Persons. In other words, plaintiffs are seeking equitable relief to enforce a term of its Plan that by its own allegations was never violated and cannot be enforced with regard to the medical treatment K.G. received. For the purposes of K.G.'s medical procedures, no "Covered Person" declined to reimburse the Plan for payments the Plan "made in error," and there is not, nor has there ever been, a Covered Person to whom the overpayment provision could apply in this case. Thus, this is not a suit "to enforce . . . the terms of the plan" under ERISA § 502(a)(3), and, more generally, ERISA has nothing to do with this case. This case involves an ERISA plan that paid medical providers for medical services they provided to an individual who is not and never was covered under the ERISA plan. 29 U.S.C. § 1132(a)(3). We affirm the district court's dismissal of plaintiffs' claim under § 502(a)(3).

### IV. PLAINTIFFS' FEDERAL COMMON CLAIM FOR UNJUST ENRICHMENT

Plaintiffs contend that they have also alleged unjust enrichment under the federal common law of ERISA in three ways: (1) as an ERISA fiduciary, (2) as an employer, and (3) as an ERISA plan. Defendants contest this, arguing that "[p]laintiffs cannot obtain relief through a common law action for unjust enrichment under ERISA because ERISA § 502(a)(3) specifically forecloses their action for equitable relief." Because we find that neither ERISA nor the Plan at issue was violated, however, there is no gap involving ERISA and this suit involves claims that are beyond ERISA's reach. See *N. Am. Coal Corp. Ret. Sav. Plan v. Roth*, 395 F.3d 916, 917 (8th Cir. 2005) ("[B]ecause there is no gap in ERISA's text regarding a fiduciary's right to bring a civil action for legal remedies to enforce plan terms or ERISA provisions, a federal common law remedy cannot be recognized.").

"It is true that, in interpreting the provisions of ERISA, federal courts are charged with the responsibility of fashioning a federal common law ' "to deal with issues involving rights and obligations under private welfare and pension plans." ' " *Buckley Dement, Inc. v. Travelers Plan Adm'rs. of Ill., Inc.*, 39 F.3d 784, 789 (7th Cir. 1994) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 n. 26 (1983)). Nevertheless, the Supreme Court has "observed repeatedly that ERISA is a ' "comprehensive and reticulated statute," the product of a decade of congressional study of the Nation's private employee benefit system.' " *Great-West Life & Annuity*

*Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)). The Court has "therefore been especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Knudson*, 534 U.S. at 209 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). Indeed "ERISA's 'carefully crafted and detailed enforcement scheme provides "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."'" *Knudson*, 534 U.S. at 209 (quoting, *Mertens*, 508 U.S. at 254).

Here, because the rights and obligations under the Plan are not at issue, i.e., there is no dispute that K.G. was not a Covered Person under the Plan, there is no need to interpret the provisions of ERISA and develop federal common law under ERISA. Accordingly, the district court's dismissal of plaintiffs' federal common law claim for unjust enrichment is affirmed.

## IV. PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs also alleged two state law breach of contract actions against defendants based upon agreements defendants made with third-party network providers, i.e., NCHA and Bowers. Plaintiffs argue that they are third-party beneficiaries of those agreements and should be able to sue to enforce those agreements because "[b]y requesting payment from the Plan and retaining any payments received from the Plan," defendants have breached those agreements. More specifically, plaintiffs

contend that under the provider agreements, defendants agreed to provide "Covered Services" to "Beneficiaries," and that "Covered Services" are "those medical services covered under a Plan, subject to any limitations on such coverage as may be contained in such Plan." Plaintiffs contend that since K.G. was not covered under the Plan defendants have breached the provider agreements by retaining payments for a person not covered under the Plan.

"A district court's preemption ruling is a question of law that we review *de novo*." *Trs. of the Aftra Health Fund v. Biondi*, 303 F.3d 765, 772 (7th Cir. 2002) (citing, e.g., *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir. 2000)). Section 514(a) states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered under ERISA. 29 U.S.C. § 1144. "The question whether a certain state action is preempted by federal law is one of congressional intent." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137-38 (1990). "The key to § 514(a) is found in the words 'relate to.'" *Id.* at 138. A law "relates to" an employee benefit plan if it has a connection with or reference to such a plan. *Id.* at 139. "ERISA thus preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan . . . ." *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998). Still, "[a] state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions." *Biondi*, 303 F.3d at 780 (citing, e.g., *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1472 (4th Cir. 1996)).

Since this case does not require interpreting or applying the Plan, nor does it relate to the Plan in any significant way, plaintiffs' state law claims are not pre-empted. See *Biondi*, 303 F.3d at 780 ("While we have held that ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan, the Trustees' common law fraud claim does not require us to interpret or apply any of the Plan's provisions." (internal quotation marks and citations omitted)). Here, plaintiffs' pleadings make it unnecessary to review the Plan to resolve its breach of contract claims. In order to resolve those claims, a court would need to interpret only the member or service agreements and the provider agreements, since it is undisputed that the information required to enroll K.G. in the Plan—i.e., for her to qualify as a Covered Person—was never submitted properly, and thus that she was never a Covered Person. Furthermore, we engage the broader analytical framework for determining whether state law claims are preempted under ERISA as discussed in *Biondi*, though we find no need to replicate that historical reference here. We conclude that plaintiffs' state law breach of contract action is an area of traditional state regulation that contains allegations which seek to satisfy the statutory objectives of ERISA and is not an alternative enforcement mechanism of ERISA. See *Biondi*, 303 F.3d at 773-82. As a consequence, we conclude that plaintiffs' state law claim is not pre-empted. Thus, the district court's dismissal of plaintiffs' state law claims is reversed and remanded to the district court.

On remand, the district court has discretion whether to exercise supplemental jurisdiction over plaintiffs' state law claims. See *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 129 S. Ct. 1862, 1866 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Nonetheless, it is well-established that the usual practice is to dismiss the state supplemental claims without prejudice. See *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."); *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997) ("Ordinarily, a federal court relinquishes jurisdiction of a pendent state-law claim when the federal claims are dismissed before trial.").

## VI.  ATTORNEY FEES AND COSTS

Plaintiffs also appeal the district court's award of attorney fees in favor of defendants in this case. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We review such an award for an abuse of discretion. *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 818 (7th Cir. 2002) (citing *Trustmark Life Ins. Co. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 884 (2000)).

"[A] fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)."

*Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010). Rather, "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Id.* at 2158 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Once a party has shown "some success on the merits," that party becomes eligible for attorney fees under § 1132(g)(1). *Hardt*, 130 S. Ct. at 2159. "Accordingly, after concluding that party has shown 'some degree of success on the merits' and is thus eligible for fees, courts must determine whether fees are appropriate." *Pakovich v. Verizon Ltd. Plan*, Nos. 10-1889 & 10-3083, 2011 U.S. App. LEXIS 15014, at *14-15 (7th Cir. July 22, 2011) (citing *Huss v. IBM Med. & Dental Plan*, Nos. 1061 & 10-2749, 2011 U.S. App. LEXIS 7563, at *34 (7th Cir. April 13, 2011)).

This circuit has recognized two tests for analyzing whether attorney fees should be awarded to a party in an ERISA case. See *Fritcher*, 301 F.3d at 819 (citing to *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998)); *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004). "The first test looks at the following five factors: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions." *Quinn*, 161 F. 3d at 478 (citing *Flipowiscz v. Am. Stores Benefit Plans Comm.*, 56 F.3d 807, 816 (7th Cir.

1995)). "The second test looks to whether or not the losing party's position was 'substantially justified.'" *Quinn*, 161 F.3d at 478 (citing *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984)). "In any event, both tests essentially ask the same question: 'was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?'" *Quinn*, 161 F.3d at 478 (quoting *Hooper v. Demco, Inc.*, 37 F.3d 287, 294 (7th Cir. 1994)); see also *Huss*, 2011 U.S. App. LEXIS 7563, at *35 ("A five-factor test may inform the court's analysis, *see, e.g., Quinn*, 161 F.3d at 478, but 'the factors in the test are used to structure or implement, rather than to contradict, the "substantially justified" standard . . . as the "bottom-line" question to be answered.'") (quoting *Lowe*, 361 F.3d at 339). "In determining whether the losing party's position was 'substantially justified,' the Supreme Court has stated that a party's position is 'justified to a degree that could satisfy a reasonable person.'" *Trustmark*, 207 F.3d at 884 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Here, defendants met their initial burden of establishing "some degree of success on the merits," as we are affirming the dismissal, although on different grounds, of two of plaintiffs' claims against them. Nonetheless, we must also determine plaintiffs' litigation position was substantially justified and taken in good faith or whether they were out to harass defendants. See *Huss*, 2011 U.S. App. LEXIS 7563, at *35 (citing *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005)).

In this case, the district court found "that a closer look at the applicable law would have alerted plaintiffs'

counsel to the lack of merit of most of their arguments" and found "an element of 'shabbiness' about plaintiffs' conduct." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical Coll. of Wis., Inc.*, No. 09-cv-205-bbc, 2010 U.S. Dist. LEXIS 60904, at *5 (W.D. Wis. June 18, 2010). More specifically, the court found that plaintiffs' claim under § 502(a)(3) "was clearly without merit," *id.* at *6, and also concluded that plaintiffs were not substantially justified in bringing their state common law claims, *id.* at *12. The district court, however, did find that plaintiffs had substantial justification to bring its claim for federal common law unjust enrichment. *Id.* at *10. In reaching these conclusions, the district court looked to both of the tests mentioned above, and ultimately ordered plaintiffs to pay $62,149.93 for work done in the defense of plaintiffs' § 502(a)(3) and state law claims. We find that this was an abuse of the district court's discretion.

Here, we find that plaintiffs' litigation position in bringing all of their claims was substantially justified and taken in good faith without the purpose of harassing defendants. In fact, the district court noted that it would be hard-pressed to characterize plaintiffs' claims as "harassment" in this case. That, coupled with the fact that we find that plaintiffs' litigation position was certainly not unreasonable, leads us to conclude that the district court abused its discretion in awarding attorney fees in this case. Accordingly, the district court's award of attorney fees is reversed.

## VII. CONCLUSION

For the reasons stated above, we affirm the district court's dismissal of plaintiffs' ERISA § 502(a)(3) and common law unjust enrichment claim under ERISA, albeit on different grounds. We reverse the district court's dismissal of plaintiffs' state law claims and remand to the district court with instructions to use its discretion as whether to exercise supplemental jurisdiction over plaintiffs' state law claims or to dismiss them without prejudice. The district court's award of attorney fees is reversed.

AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED.