In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-3837 & 12-3929

KOLBE & KOLBE HEALTH AND WELFARE BENEFIT PLAN and
KOLBE & KOLBE MILLWORK CO., INC.,

*Plaintiffs-Appellants / Cross-Appellees*,

*v.*

MEDICAL COLLEGE OF WISCONSIN, INC. and CHILDREN'S
HOSPITAL OF WISCONSIN, INC.,

*Defendants-Appellees / Cross-Appellants.*

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 3:09-cv-00205-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED OCTOBER 3, 2013 — DECIDED FEBRUARY 5, 2014

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge*. These cross-appeals present issues
concerning ERISA, Wisconsin law, and Rule 11 sanctions.
The plaintiffs are an employee benefit plan and the employ-

er; we'll refer to them jointly as "the plan." The defendants are two Wisconsin medical institutions, one a medical college that also provides patient care in clinics and hospitals, the other a children's hospital. See "About MCW: Facts 2013," www.mcw.edu/MCWfacts.htm (visited Feb. 4, 2014). The institutions are affiliated and we'll pretend they're one, which we'll call "the hospital."

In a series of rulings in 2009 and 2010, the district judge dismissed the plan's claims, which were both for ERISA violations and for breach of contract under Wisconsin law. Eventually she dismissed the entire suit, and awarded attorneys' fees to the hospital as a sanction for the plan's having filed, in the judge's view, frivolous claims. The plan appealed. We affirmed the dismissal of the ERISA claims but reversed the dismissal of the breach of contract claim because we disagreed with the district judge's ground for the dismissal, which was that the claim was preempted by ERISA. We also reversed the imposition of sanctions, on the ground that the plan's claims were colorable and had been made in good faith. 657 F.3d 496 (7th Cir. 2011).

The only issue for the district court on remand was whether there had been a breach of contract under Wisconsin law. The court could have relinquished jurisdiction over that claim, since it was just a supplemental claim, see 28 U.S.C. § 1367(c)(3), but it didn't have to, decided not to, and went on to grant summary judgment in favor of the hospital. The plan again appeals. The hospital cross-appeals, complaining about the district judge's refusal to sanction the plan under Rule 11 for its pressing ahead with its breach of contract claim after the hospital showed (the hospital contends) that the claim was preempted by ERISA. We had held

in our first decision that ERISA did *not* preempt the contract claim, but the hospital argues that evidence presented in the summary judgment proceeding on remand established preemption.

The hospital had entered into what is called a "provider agreement" (or alternatively a "physician agreement") with North Central Health Care Alliance and Bowers & Associates—firms that act as middlemen between hospitals and ERISA health plans. The agreement requires the health plan to reimburse any hospital designated in the agreement for services that the hospital renders to a plan beneficiary, defined as anyone who is "eligible to have their medical services paid for" by the plan.

Kolbe's health plan covers dependents of employees as well as the employees themselves. On August 2, 2007, an employee of the Kolbe company reported that his newly born daughter had a serious medical condition. He asked the plan to cover her treatment expenses. Not until August 20, however, did he submit the form that required him to answer questions germane to whether the child's expenses were covered, such as whether he provided at least 50 percent of the dependent's support. He answered neither that question nor two other questions, about the child's residence and status as a dependent for federal income tax purposes, questions also intended to elicit answers that would determine whether the child's medical expenses were covered. Protracted efforts by the health plan to determine coverage followed, until on June 24, 2008, the plan informed the employee that the child was not covered. That ended the plan's payments to the hospital—but it had already paid the hospi-

tal almost $1.7 million, and it demanded that the money be refunded. The hospital refused.

The provider agreement says nothing about refunds. Yet the hospital concedes that had it made a mistake and overcharged the plan, the plan would be entitled to a refund, because the overcharge would be a breach of the agreement, and a refund of the amount overcharged would equal the compensatory damages owed to the victim of the breach. But the hospital had made no mistake. The plan had paid the hospital to treat the child and it *had* treated her, and there is no suggestion that there was anything amiss in the treatment or in the charges for it.

So what could be the source of a legal right to a refund? The plan points out that the hospital probably can recover some of the cost of treating the child from Medicaid. See Wis. Admin. Code §§ DHS 101.01, 106.03(3)(c)(2)(b). But so what? Generally if a hospital can recover expenses of treatment from either private insurance or Medicaid, it has to try to collect from the private insurer first, Medicaid being the payer of last resort. So if an individual is covered both by private insurance and Medicaid, the hospital is typically required to bill the private insurer before billing Medicaid. See 42 U.S.C. § 1396a(a)(25)(A); Wis. Admin. Code §§ DHS 106.03(7)(b), (c); *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268, 291 (2006); *Fonseca v. United States*, No. 01-C-0544, 2007 WL 601937, at *2 (E.D. Wis. Feb. 23, 2007); ForwardHealth, "Medicaid as Payer of Last Resort," www.forwardhealth.wi.gov/WIPortal/ Online%20Handbooks/Display/tabid/152/Default.aspx?ia =1&p=1&sa=87&s=9&c=54&nt=Medicaid+as+Payer+of+Last+ Resort (visited Feb. 4, 2014).

The hospital, having been paid in full by the Kolbe health plan, has no possible claim against Medicaid—especially since the mistake about coverage was not the hospital's, but the plan's, mistake. The plan took almost eleven months to determine that the child of its insured was not a plan beneficiary. It's one thing for a seller to refund money or take other reparative measures because of a mistake it's made, and another to do so because the buyer has made a mistake. It's not as if the hospital has been unjustly enriched by keeping the money that Kolbe paid it—as we said, there is no suggestion that it overcharged for the medical services that it provided the child, or provided inadequate services. Nor has the plan appealed the district court's rejection of its claim for unjust enrichment.

The plan pitches the appeal it has taken on the proposition that the provider agreement contains an implicit term requiring a refund in the circumstances of this case. There is no novelty in judges' interpolating terms into contracts. A famous example is a "best efforts" clause read into an exclusive dealing contract. The maker of a product who gives a dealer the exclusive right to sell the product within a designated area hands a monopoly to the dealer, enabling him to minimize expenses on marketing the product. The dealer will sell less, but (depending on the effect on his sales of skimping on marketing, in relation to the money he saves by skimping) may come out ahead; but the producer will be disserved. Believing that the parties must have tacitly agreed that the dealer would be required to use his best efforts to market the product, courts read a best-efforts commitment into the contract. E.g., *Classic Cheesecake Co. v. JPMorgan Chase Bank, N.A.*, 546 F.3d 839, 846 (7th Cir. 2008); *Sonoran Scanners, Inc. v. Perkinelmer, Inc.*, 585 F.3d 535, 542–43 (1st

Cir. 2009); *Wood v. Duff-Gordon*, 118 N.E. 214, 214 (N.Y. 1917) (Cardozo, J.).

There are many other examples of the principle that a contract consists not only of explicit terms but of implicit ones needed to make the explicit terms conform to the parties' reasonably inferable intentions and expectations. See, e.g., *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758, 1775 (2010); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607–08 (7th Cir. 1993) (en banc); 2 *Restatement (Second) of Contracts* § 204, pp. 96–97 (1981). (This is true by the way of ERISA plans in their capacity as contracts, see *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452–53 (4th Cir. 1992), though we are concerned in this case with the interpretation of the provider agreement, which is not the ERISA plan.) For example, "you cannot prevent the other party to the contract from fulfilling a condition precedent to your own performance, and then use that failure to justify your nonperformance." *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 185 (7th Cir. 1985); see also *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966) (en banc) (Friendly, J.). Still another example, one closer to this case but not close enough to carry the day for the Kolbe plan, is a refusal to accept the return of a product that had a defect the buyer hadn't noticed at the time of purchase but discovered within a reasonable time. *Northrop Corp. v. Litronic Industries*, 29 F.3d 1173, 1176 (7th Cir. 1994); *Deere & Co. v. Johnson*, 271 F.3d 613, 620 (5th Cir. 2001); *Miron v. Yonkers Raceway, Inc.*, 400 F.2d 112, 119–20 (2d Cir. 1968); UCC § 2-608(1)(b).

But the plan doesn't invoke the principle that the cases we've cited illustrate—call it "the efficacy principle," that a court will interpolate terms when necessary to make a con-

tract work. Instead the plan invokes custom. It argues that it is customary in the dealings between hospitals and health plans for a hospital to refund payments received from an employer health plan should the employer discover, after beginning to pay the hospital, that the patient being treated by the hospital is not a plan beneficiary.

Refunds by hospitals to health plans are indeed common, just as refunds by retailers are common, and generally for the same reasons: either that the plan overpaid or that the plan is a good customer of the hospital, and good customers receive favored treatment because the seller doesn't want by annoying them to lose them—although in the latter case the customer dissatisfied with his purchase at least returns it (with very rare exceptions, as we're about to see), and the seller can resell it.

But to infer a contractual obligation to refund a purchase price when the seller is faultless and the buyer does not return the purchase is to infer absurdity. Suppose a person buys a Rolex watch, retailing for several thousand dollars. Walking from the store to his office, he removes the watch from his wrist and holds it in front of his eyes, the better to revel in its opulence. A thief chances by, snatches the watch, and runs off. The watch is never seen again. Does Rolex have a legal duty to refund the purchase price? No—and still no even if it had made comparable refunds in similar circumstances to Bill Gates, Warren Buffett, Carlos Slim, and Christy Walton. Far from being necessary to make the provider agreement effective, interpolating an obligation to make a refund when the seller is faultless and the buyer is asking to be compensated for his own mistake would make the contract fail by reducing the buyer's incentive to exercise proper

care in determining the eligibility of presumed plan benefi-
ciaries. The seller (the hospital) would demand compensa-
tion to assume liability for the buyer's errors—compensation
in other words for assuming a "moral hazard," the sort of
risk that impels a fire-insurance company to insist that an
insured install a sprinkler system. The "insurance" against
its own mistakes that the Kolbe plan insists the hospital
agreed to provide could induce the plan to invest less care
than it should in making a prompt determination of eligibil-
ity.

The plan points out that the hospital has sometimes pro-
vided refunds to the Kolbe plan or other third-party benefi-
ciaries of provider agreements in some cases in which the
plan had mistakenly believed that the hospital's patient was
a plan beneficiary. There was a refund of more than $250,000
involving such a patient. But the motives for making refunds
are various, as illustrated by our Rolex example, and the fact
that the hospital may on occasion have made refunds in cir-
cumstances similar or even identical to this case neither es-
tablishes a contractual obligation on the hospital's part to
make such refunds, nor could have lulled the Kolbe plan in-
to thinking it took no risk in conducting a dilatory investiga-
tion of the eligibility of a child with a very serious medical
condition bound to cost a great deal to treat.

So there is no merit to the plan's challenge to the district
court's interpretation of the contract. But there is equally no
merit to the hospital's contention that Kolbe's state-law
claim is so clearly preempted by ERISA that Kolbe should be
punished for having made it.

A contract dispute that requires for its resolution an in-
terpretation of an ERISA plan can be resolved only in ac-

cordance with ERISA, which in the case of a dispute such as this would mean in accordance with a federal common law of contracts, tailored to the policies of ERISA, since ERISA, while preempting state law regulating employee benefit plans, does not set forth any contract principles. In our first decision in this litigation we held that no interpretation of the plan was required, only of the provider agreement. 657 F.3d at 504–05. On this second appeal, however, the hospital points us to evidence presented on remand that the child may have been a beneficiary of the Kolbe health plan after all, a determination that the hospital contends requires interpretation of the plan, for it is the plan that determines who its beneficiaries are.

But whether the hospital is right or wrong about the child's status, it hasn't shown that the plan's refusal to admit that the child is a beneficiary is frivolous, or otherwise warrants sanctions. Moreover, we said in our first decision that preemption would *not* be an issue on remand—that there was no preemption and therefore the only issue on remand would be breach of contract. 657 F.3d at 507. That was this court's mandate, and the law of the case. The hospital defied us. It is the hospital that is lucky to escape being sanctioned.

AFFIRMED.