In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1085

SHIRLEY TEMME, *et al.*,

*Plaintiffs-Appellees*,

*v.*

BEMIS COMPANY, INCORPORATED,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 08-cv-0090 — **Patricia J. Gorence**, *Magistrate Judge*.

SUBMITTED JUNE 25, 2014[*] — DECIDED AUGUST 6, 2014

Before KANNE and WILLIAMS, *Circuit Judges*, and
SPRINGMANN, *District Judge*[**]

---

[*] This successive appeal was submitted to the original panel under Seventh Circuit Operating Procedure 6(b). After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

PER CURIAM. This appeal from an award of attorneys' fees marks the end of protracted litigation between the parties. In 2008, the plaintiff class sued Bemis Company, Inc., for eliminating certain health-care benefits that they believed they were owed under a 1985 plant-closing agreement with Bemis's predecessor in interest. We reversed the district court's initial grant of summary judgment to the defendants, *see Temme v. Bemis*, 622 F.3d 730 (7th Cir. 2010), and remanded. Just before the case went to trial, the parties settled. The plaintiffs then sought, and were awarded, attorneys' fees in the amount of $403,053.75. Bemis appeals the fee award, arguing that its litigation position was substantially justified. Concluding that the district court did not abuse its discretion in awarding these fees, we affirm.

## I. BACKGROUND

We will assume familiarity with our prior opinion and discuss the facts only as they pertain to the fee issue. The plaintiffs and their employer, Hayssen Manufacturing Company, were parties to a Plant Closing Agreement that promised the plaintiffs certain medical benefits upon retirement. In 1996, Bemis acquired Hayssen and assumed its obligations under the Agreement. After the acquisition, Bemis twice reduced the benefits it provided under the Agreement: once in 2005 (by increasing co-pays and deductibles) and again in 2007 (by eliminating its prescription drug program). In response, the plaintiffs sued, alleging that the reductions in benefits breached the Agreement and thereby violated the

---

** Of the United States District Court for the Northern District of Indiana, sitting by designation.

Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, and the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a). Judge Stadtmueller certified plaintiffs' class, but ultimately granted summary judgment to Bemis, reasoning that the Agreement did not give the plaintiffs a lifetime interest in a certain level of health benefits. About a month after Judge Stadtmueller's summary judgment ruling, Bemis eliminated all medical benefits under the Agreement.

The plaintiffs appealed the grant of summary judgment, and we reversed, concluding that the parties did intend to provide lifetime medical coverage. *Temme*, 622 F.3d at 737. We remanded for consideration of what level of medical benefits the Agreement mandated and whether Bemis breached the Agreement in 2005 and 2007. *Id.* at 739.

On remand, the case was transferred by consent to Magistrate Judge Gorence. The plaintiffs amended their complaint to allege that the complete elimination of benefits in 2009 also violated ERISA and the LMRA. They also sought, and were granted, a preliminary injunction forcing Bemis to restore the benefits eliminated in 2009 and provide a basic Medicare Part D drug benefit, essentially returning the plaintiffs to the situation they were in before the 2007 benefits reduction. (Before the preliminary injunction, Bemis had not restored any benefits, even after our ruling that the parties contracted for some level of benefits, and it continued to insist, despite our opinion, that the Agreement did not obligate them to provide the plaintiffs anything.) In her order granting the preliminary injunction, the magistrate judge highlighted the harm likely to befall the plaintiff class (all octogenarians and older) without the promised benefits. For

example, the magistrate judge noted that without the Agreement's added benefits, the slim Medicare benefits that the class representative Thomas Temme was limited to left him nearly broke. Those modest benefits, the court observed, could not protect him from crippling debt after he suffered a stroke and his wife attempted to cope with Alzheimer's and glaucoma. Thomas Temme has since passed away.

The plaintiffs then moved to bifurcate the pending trial, asking the magistrate judge to separate the liability phase of the trial from the damages phase. To that extent, the court granted the motion. But the magistrate judge also recognized that the plaintiffs believed that Bemis's actions in 2007 and 2009 breached the Agreement as a matter of law. Mindful of our discussion in the case's first appeal that a finder of fact needed to determine the level of benefits promised by the Agreement, the magistrate judge was unwilling to go that far. She also rebuffed the defendant's attempt to decertify the class on the basis of *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011).

On the eve of trial, the parties settled. Their settlement called for Bemis to pay for any plaintiff to participate in the Medicare Part D prescription drug benefit and in the Medicare supplement plan. The settlement also required Bemis to reimburse certain out-of-pocket costs incurred between 2007 and 2011 (when the preliminary injunction was issued) by any plaintiffs who participated in these programs during that time. The parties failed to resolve, however, whether the plaintiffs were entitled to attorneys' fees.

The parties put the issue of attorneys' fees before the magistrate judge, and she awarded fees. ERISA allows a court, in its discretion, to award "a reasonable attorney's fee

and costs of action to either party." 29 U.S.C. § 1132(g)(1).
The magistrate judge applied each of the two tests that, in
different decisions, we have told district judges in ERISA
cases to use when deciding whether to award fees. *See Kolbe
& Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisconsin, Inc.*, 657 F.3d 496, 505–06 (7th Cir. 2011) (describing two
tests and observing that they both seek essentially the same
information). Under the first test, the magistrate judge examined five factors: 1) the degree of the offending parties' culpability; 2) the degree of the ability of the offending parties
to satisfy an award of attorneys' fees; 3) whether or not an
award of attorneys' fees against the offending parties would
deter other persons acting under similar circumstances; 4)
the amount of benefit conferred on members of the pension
plan as a whole; and 5) the relative merits of the parties' positions. *See id.* She found that all five factors weighed in favor of an award of fees. She then turned to the second test,
which evaluates whether the defendant's position was "substantially justified." *Id.* at 506. Noting that the defendant had
eliminated benefits that, in our words, the plaintiffs were
"clearly entitle[d]" to, *Temme*, 622 F.3d at 737, the magistrate
judge concluded that the defendant's position was not substantially justified.

The magistrate judge then examined the fee petitions to
determine the proper size of an award. She struck billing entries that were vague or for time not reasonably expended on
the case, concluded that the lawyers' billing rates were reasonable, and calculated the lodestar amount. Finding no reason to alter the lodestar, that amount became the fee award:
$403,053.75, for four years of advocacy, including an appeal
and trial preparation. On appeal, Bemis disputes their liability for any fees.

## II. ANALYSIS

We must dispose of several preliminary matters before proceeding to the merits of this appeal. First, Bemis calls into question the applicable standard of review. Bemis concedes that an award of attorneys' fees generally is reviewed for abuse of discretion, *see, e.g.*, *Kolbe & Kolbe*, 657 F.3d at 505, but argues that a stricter standard should apply in this appeal. It contends that because the magistrate judge presided over the litigation only after remand from this court, the judge never developed the kind of familiarity with the issues that we have cited as reason to apply this deferential standard of review. We disagree. As we have noted, our standard of review is deferential for "a number of reasons," not just the trial judge's familiarity with the case, including "the issues tend to be factual matters for which appellate review is limited; the accuracy of the ultimate decision is not likely to be enhanced by frequent and detailed appellate review; and it would be wasteful to engage in a 'second major litigation' over attorneys' fees." *Lock Realty Corp. IX v. U.S. Health, LP*, 707 F.3d 764, 773 (7th Cir. 2013). We also reject Bemis's argument because, as one of our sister circuits has said, "[w]e can hardly imagine a more futile and foolhardy endeavor than struggling to review each district court's degree of familiarity with a case to decide how much deference to grant its findings and conclusions." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993); *see also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853–54 (10th Cir. 1993). Moreover, district courts generally have more experience administering fee-award decisions in the first instance. Thus we will review for an abuse of discretion.

Bemis next questions whether ERISA, with its fee-shifting provision, is the proper authority for deciding whether to award fees; it suggests that this case is properly conceived of as an LMRA or contract case, so the magistrate judge was required to conduct a different analysis. Bemis raises two arguments to support its position, but neither is persuasive.

First, Bemis argues the terms of the healthcare-benefits agreement were incorporated into the Plant Closing Agreement by reference to the parties' separate collective-bargaining agreement. Bemis believes that under *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011), the terms of *that* agreement were not "terms of the plan," *see* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), that the plaintiffs could enforce using ERISA. This argument fails because we previously determined that the terms of this plan were found only when reading the collective-bargaining agreement and Plant Closing Agreement jointly, and therefore both documents must necessarily be considered. *See Temme*, 622 F.3d at 736 (interpreting the phrase "retired employee medical benefit" by reading the Closing Agreement and CBA "in conjunction" with one another). *Cf. Orth v. Wisconsin State Employees Union Council 24*, 546 F.3d 868 (7th Cir. 2008) (analyzing ERISA plan contained in collective bargaining agreement). This is not the case, like in *CIGNA*, where the Court refused to read the summary documents as terms of the plan because they constituted "information *about* the plan" and were not, themselves, "*part of* the plan." *CIGNA*, 131 S. Ct. at 1877 (emphasis in original). Here, our previous decision determined what was "part of the plan," and that included both documents.

Second, according to Bemis, this case does not involve an "ERISA plan" because Bemis simply pays for benefits that the plaintiffs have received through third-party provided insurance. Again, we disagree. Hayssen (and, as its successor, Bemis) contracted with the plaintiffs to provide lifetime welfare benefits in the form of reimbursement for healthcare costs. *See Temme*, 622 F.3d at 737; *see also* 29 U.S.C. § 1002(1). When parties collectively bargain, as the parties here did, to an agreement that vests in employees with this kind of welfare benefit, a breach of the agreement violates ERISA in addition to the LMRA. *See Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 914 (6th Cir. 2000); *Am. Fed'n of Grain Millers v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997). Accordingly, ERISA is the proper authority for an award of fees.

Finally, Bemis argues *any* award would be excessive because the plaintiffs' union, and not the plaintiffs themselves, financed the litigation. Bemis cites no authority for this position, nor have we found any. To the contrary, third-party financing of litigation is generally not a bar to an award of attorneys' fees. *E.g.*, *Morrison v. Comm'r*, 565 F.3d 658, 666 (9th Cir. 2009); *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1409-10 (Fed. Cir. 1997); *Am. Council for the Blind of Colo., Inc. v. Romer*, 962 F.2d 1501, 1503–04 (10th Cir. 1992) (judgment vacated on an unrelated ground, 506 U.S. 1075 (1993)); *Tidewater Patent Dev. Co. v. Kitchen*, 421 F.2d 680, 680–81 (4th Cir. 1970). This result is consistent with the more general proposition that a wrongdoer should not reap the windfall of the victim's industry in having secured an alternative source of payment. *See* Restatement (Second) of Torts § 920A(2) (1979). And since the purpose of fee-shifting in the ERISA context is in part deterrence, we see no reason why

third-party financing should automatically preclude a fee award.

Having determined that ERISA provides the appropriate framework for this appeal, we turn to Bemis's argument that, under the standards of ERISA, the award was improper. Fees may be awarded under ERISA to a party who achieves "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Before *Hardt*, as the district court observed, we offered two, related tests for determining when an award of attorney's fees is appropriate under ERISA. One, adopted in some form by all our sister circuits, provided the district court with five factors to guide its discretion, the same five factors analyzed by the district court here. The other test asked simply whether the position of the party against whom the fees are sought was "substantially justified." If so, no fees were awarded. *See Kolbe & Kolbe*, 657 F.3d at 505–07; *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011).

As in other cases, we have not been asked to decide whether *Hardt* does away with our two tests, *see Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1089 (7th Cir. 2012), but we do note that no Court of Appeals since *Hardt* has abandoned its five-factor test. Two approaches have developed, however, to incorporate *Hardt*'s "some degree of success" principle into the jurisprudential landscape. One holds that *Hardt* defines a threshold for eligibility for a fee award, but that the district court still must consider the five factors to determine whether an award is appropriate. *See Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 103–04 (3d Cir. 2012); *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 223 (4th Cir. 2011). The second approach holds that

assessing whether a party achieved some degree of success on the merits of its claim is the only factor a district court *must* account for, though a district court may still consider the other factors, as before. *See Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014); *In re Interstate Bakeries Corp.*, 704 F.3d 528, 537–38 (8th Cir. 2013). But, even under the second approach, if a district court proceeds to analyze the five factors, a court of appeals reviews that analysis for abuse of discretion, just as it would before *Hardt*. *Donachie*, 745 F.3d at 47; *Nichols v. Unicare Life and Health Ins. Co.*, 739 F.3d 1176, 1184 (8th Cir. 2014). We have affirmed the use of both tests post-*Hardt*. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 915 (7th Cir. 2013) (finding no abuse of discretion in use of "substantially justified" test); *Raybourne*, 700 F.3d at 1090-91 (finding no abuse of discretion in use of five factor test). Because the district court analyzed the five factors and in so doing concluded, as *Hardt* requires, that the plaintiffs achieved "some degree of success," we will review that analysis for abuse of discretion.

Bemis first contests whether the plaintiffs achieved any degree of success on the merits, but this argument goes nowhere. The settlement agreement provided the plaintiffs with benefits commensurate with those they enjoyed before 2007—the very same benefits they argued they were entitled to as a matter of law when they moved to bifurcate the trial. Had they won the same after a trial, we would consider them a "prevailing party." *Cf. T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003). Because plaintiffs sought restoration of benefits to their 1985 level in their amended complaint, and because plaintiffs did not achieve that ultimate success, Bemis argues that tilts against awarding fees. However, the standard is that fees will be awarded

to "parties achieving *some success*, even if not major success." *Hardt*, 560 U.S. at 254 (emphasis in original, quotation omitted). We have no trouble concluding that the plaintiffs achieved *some* degree of success on the merits or that the benefits conferred on the class members (the fourth of the five-part test) favors the awarding of fees.

Next, Bemis points to the initial grant of summary judgment in its favor to argue that, even if the plaintiffs eventually achieved some success, Bemis's litigation position was (at least initially) substantially justified. And since it was substantially justified, Bemis concludes, the fee award was improper, or at least excessive. We find this argument unavailing for three reasons.

First, when we review the five-factor test, we consider the merits of the loser's position as just one of five factors (the fifth factor), rather than in isolation. *See, e.g.*, *Kolbe & Kolbe*, 657 F.3d at 505-06; *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 635–36 (4th Cir. 2010); *Martin v. Arkansas Blue Cross and Blue Shield*, 299 F.3d 966, 973 (8th Cir. 2002) (en banc); *Eddy v. Colonial Life Ins. Co. of Am.*, 59 F.3d 201, 207–10 (D.C. Cir. 1995). Bemis says nothing significant about the other four factors, or anything other than its supposedly substantially justified litigation position.

Second, even the "substantially justified" factor (or test, if we consider it to the exclusion of the other factors) does not favor Bemis. That test was borrowed from the Equal Access to Justice Act. *See Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 828–30 (7th Cir. 1984) (abrogated on an unrelated ground by *McCarter v. Retirement Plan for Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649 (7th Cir. 2008)). In applying the test in its original form, courts examine the govern-

ment's *pre*litigation behavior, and Bemis has not addressed its behavior before the suit started. *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1080-81 (7th Cir. 2000).

Finally, just as the Supreme Court has stated that a losing position may still be substantially justified, a party "could take a position that is not substantially justified, yet win." *Pierce v. Underwood*, 487 U.S. 552, 569 (1988). Thus, the fact that Bemis won at some point in the litigation does not mean its position was "substantially justified." The relevant "substantiality" inquiry should be into a party's posture during the case as a whole, rather than treating each segment as an "atomized line-item[]." *Comm'r v. Jean*, 496 U.S. 154, 161–62 (1990). Here, the district court's analysis properly took account of the entire litigation background. In its analysis under both tests, it observed that Bemis ceased providing a benefit that we ruled the retirees were "*clearly* entitle[d]" to. *Temme*, 622 F.3d at 737 (emphasis added). Moreover, even after our ruling, Bemis persisted in denying that benefit until plaintiffs moved for an injunction requiring compliance, which the district court granted under the threat of contempt. This analysis also points the first of the five factors—the degree of the defending party's culpability—towards the award of fees. (Bemis does not challenge its ability to satisfy the award, the second factor.)

In further considering the case as a whole, the district court also noted the desirability of preventing other companies from cutting off or needlessly delaying benefits in a similar manner. In so reasoning, the district court properly looked at more than a short-lived, provisional victory for Bemis at one isolated point in this litigation. This tilts the third of the five factors we consider—the deterrence effect—

in favor of awarding fees. In all, the five factors weigh towards the grant of attorneys' fees.

Thus we conclude that the district court did not abuse its discretion in awarding attorneys' fees to the plaintiffs. We reject Bemis's invitation to cut the amount of the fees awarded because, as discussed, Bemis's position as a whole throughout the case supported the award of the entire lodestar amount (minus the subtractions by the lower court discussed above).

## III. CONCLUSION

Accordingly, the award of fees is therefore AFFIRMED.